MATTIE LANIER v. THE PULLMAN COMPANY AND SOUTHERN RAIL-
WAY COMPANY.

(Filed 24 November, 1920.)

**1. Verdict—Motions—Verdict Set Aside—Court's Discretion.**

Motions to set aside a verdict as being against the weight of the evidence are addressed to the discretion of the trial judge, and not reviewable on appeal unless it is grossly abused.

**2. Parties—Misjoinder—Pleadings—Motions—Arrest of Judgments.**

Objection to a defect or misjoinder of parties to the action must be made by demurrer when such appears on the face of the pleadings, or they will be deemed as waived; and when such defect does not so appear, by petition or answer, and a motion in arrest of judgment on these grounds will be overruled.

LANIER v. PULLMAN CO.

**3. Constitutional Law—Defenses—Judgments.**

The defense of a constitutional right comes too late, for the first time after judgment rendered, and especially so when it has not been properly presented either by the request for the submission of an issue, or for an instruction.

**4. Railroads—Federal Control—Director General—Parties.**

The Federal act for the Government control of the railroads during the war specifically gives a right of action against the carrier without joining the Director General of Railroads (sec. 10) ; and objection that an action sounding in tort against a railroad company is fatally defective in not making the Director General a necessary party, is untenable. *Semble*, the question as to whether he should be made a formal party is not a practical one in this case.

**5. Appeal and Error—Objections and Exceptions—Evidence—Pleadings—Several Causes of Action.**

Where, in an action to recover damages of a pullman company, the plaintiff alleges two causes of action, though in one section of the complaint, one as to the defendant's ticket agent wrongfully refusing to sell her a lower reservation when he had it for sale at the time, and the other, that his conduct towards her then was wantonly rude and insulting, and there was evidence to sustain either one, a general motion to nonsuit directed to both causes of action, is properly denied.

**6. Carriers of Passengers—Contracts—Principal and Agent—Tort of Agent—Pullman Companies.**

The act of a ticket agent of a Pullman company in tossing a railroad ticket back in the face of a woman endeavoring to get a reservation on its car, in a rude and insolent manner, renders the company liable for an assault by its agent sufficient to sustain an action for damages against it, under implication from the contract of carriage that the passenger will receive proper treatment by the carrier's employees, and reasonable protection from insult or injury.

**7. Appeal and Error—Objections and Exceptions—Instructions.**

Where the charge of the court, generally objected to, requires the application of more than one principle of law, it will not be held for reversible error, on appeal, that one of them was erroneous if the other was not so.

**8. Appeal and Error—Assignments of Error—Instructions—Objections and Exceptions.**

Assignments of error must be based upon an exception duly taken, and an exception to the charge, not appearing in the record on appeal, will not be considered.

APPEAL by defendant from *McElroy, J.,* at May Term, 1920, of GUILFORD.

The plaintiff alleged in her complaint that she had gone from her home in Greensboro, N. C., to Rochester, Minn., to place herself under the care and medical treatment of the Mayo Brothers, celebrated physi-

cians and surgeons of that place, and that after receiving treatment and
leaving the hospital, she started on her return to her home by way of
Cincinnati, Ohio, where she applied to the Pullman Company's agent,
at its ticket office there, for the reservation of a lower berth to Greens-
boro, N. C., and that the said agent, instead of selling a ticket to her,
and in willfull disregard of his duty, "wantonly, rudely, and insultingly,
without any just cause or excuse for his conduct, refused to sell the same
to the plaintiff, who was then and there ready and willing to pay for
the same, although he had the same then on hand for sale, and although
plaintiff explained and stated to him that she was ill and nervous, and
that her condition of mind and body was such that such accommodations
were necessary for her comfort and the preservation of her health. That
by reason of the said wrongful conduct on the part of the defendants
by their said agent, plaintiff was forced and compelled to board the
train of the defendants leaving Cincinnati at nine or ten o'clock at night
without any sleeping-car accommodation or reservation, and in an ordi-
nary day coach, which was full of noisy, intoxicated, rude, and boisterous
people, and to ride in the same. till between eleven and twelve o'clock
that night; that plaintiff was sick, ill and nervous, and that she was
injured and suffered physical pain and mental anguish, she was humili-
ated, and her health was injured and damaged, all as the direct result of
said wrongful, rude, insulting, and wanton conduct of defendant's agent,
all to her damage in the sum of twenty-five hundred dollars."

The testimony was heard, and under the charge of the court the jury
returned a verdict in favor of the plaintiff, awarding her damages in
the sum of fifteen hundred dollars, and further finding that she was not
injured by any wrong of the Southern Railway Company. Judgment
was entered upon the verdict in favor of the railway company, and
against the defendant, the Pullman Company, for the amount of the
verdict, whereupon the latter appealed to this Court.

Defendant, the Pullman Company, submitted the following motion
and assigned the following errors:

"The Pullman Company, through its attorneys, moved the court to
set aside the verdict rendered in the above entitled matter at this term
of the court, and in arrest of judgment for that:

"1. Said judgment was rendered contrary to the evidence.

"2. Because of improper parties in that the Director General of
Railroads was not made a party to the action, who, at the time of the
trial, was the real party in interest.

"3. That said judgment was rendered in violation of the Constitution
of the United States in that it would deprive the defendant Pullman
Company of its property without due process of law and deny the de-

fendant the equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States."

The Pullman Company assigns the following errors:

"1. The refusal of his Honor to dismiss the action, and for judgment, as in the case of nonsuit; after the plaintiff had produced her evidence and rested her case.

"2. For that his Honor erred in overruling defendant's motion for judgment of nonsuit after all the evidence on both sides was in.

"3. Because the court charged the jury as set forth in defendant's third assignment.

"4. Because the Court charged the jury as set forth in defendant's fourth assignment.

"5. Because the court refused to charge the jury as prayed by defendant as follows: (prayer for special instructions by defendant Pullman Company), but not set out in the assignment or otherwise appearing therein.

"6. The refusal of his Honor to grant the motion of defendant to set aside the verdict.

"7. The refusal of his Honor to grant the motion of defendant in arrest of judgment.

"8. That his Honor rendered judgment in favor of the plaintiff, as set out in the record."

*W. P. Bynum and R. C. Strudwick for plaintiff.*
*Justice & Broadhurst and E. C. Gregory for defendant.*

WALKER, J., after stating the case: We will consider this appeal by taking up the exceptions and assignments of error *seriatim* and according to the order in which they are presented in the record.

1. The motion to set aside the verdict because against the weight of the evidence or contrary thereto should have been addressed to the court below. We do not review its decision upon such a motion, as it is discretionary, unless there is gross abuse of the discretion, which does not appear in this instance. The cases on this subject are too numerous to be cited, and we refer only to the last one. *Harris v. Turner,* 179 N. C., 322.

2. An objection that there are improper parties, as here alleged, cannot be made by motion in arrest of judgment. Where there is a defect of parties, the objection can be taken by demurrer, if the defect appears on the face of the pleadings, and when it does not so appear, the proper pleading is an answer. 1 Pell's Revisal of 1905, sec. 474, subdivision 4; Consol. Statutes, sec. 511, and subdivisions. An objection to a misjoinder of parties may be taken in the same way. The objection

here is that there is a misjoinder and not a defect of parties. Neither can be availed of by a motion in arrest of judgment. Pell's Revisal, sec. 474, and notes. "A defect of parties will be deemed to have been waived, unless taken advantage of by demurrer when such defect appears on the face of complaint, or petition, or by answer when it does not so appear." *Silver Valley Min. Co. v. Baltimore Smelting Co.*, 99 N. C., 445; *S. c.*, 101 N. C., 679; *Lewis v. McNatt*, 65 N. C., 63; *Lunn v. Shermer*, 93 N. C., 164; *Howe v. Harper*, 127 N. C., 356; *Bridgers v. Staton*, 150 N. C., 216; *Smoak v. Sockwell*, 152 N. C., 503. A misjoinder of parties is waived by failing to demur. *Cooper v. Express Co.*, 165 N. C., 538. "If the defendant deemed the trustee a necessary party," it was said in *Watkins v. Kaolin Mfg. Co.*, 131 N. C., 536, 538, "he should have demurred, and his failure to do so was a waiver." Revisal of 1905, sec. 478. *Watkins' case* is like this one. There was no misjoinder here. There was no demurrer filed in this case, nor was the objection taken by the answer. There is some reference in the answer to the order of the President, purporting to have been issued by virtue of the power vested in him by the act of Congress, but there is no specific objection, by demurrer or answer, that the Director General was not made a party to the suit, or that he was a necessary party. The validity of the President's order, to which we have referred, is discussed very fully in the case of *Hill v. R. R.*, *post*, 428, which was decided at this term, and to which we refer without adding anything to what is there so well stated.

3. The constitutional question raised for the first time after the rendition of the judgment in the cause comes too late, nor is it attempted to be presented in the proper way. There was no issue requested and no instruction concerning it. But if it had been properly raised, and in due time, the defendant could be sued by the very terms of this act of Congress (section 10), approved 21 March, 1918, entitled "An act to provide for the operation of transportation systems while under Federal control," etc. Section 10 provides: "That carriers, while under Federal control, shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such Federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers, and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government. Nor shall any such carrier be entitled to have transferred to a Federal Court any action heretofore or hereafter instituted by or against it, which action was not so trans-

ferable prior to the Federal control of such carrier; and any action which has heretofore been so transferred because of such Federal control or of any act of Congress or official order or proclamation relating thereto shall, upon motion of either party, be transferred to the court in which it was originally instituted. But no process, *mesne* or final, shall be levied against any property under such Federal control." Whether the Court of last resort, in the Federal jurisdiction, will decide the question, which is attempted to be raised by appellant, in his favor, we know not. This Court has held in several cases that the railroad company can be sued, and judgment recovered, under and subject to the provision of the act of Congress of 21 March, 1918, sec. 10 (U. S. Statutes at Large, part 1, page 457). It was said in *Hill v. R. R.,* 178 N. C., 609, 612, that "the Director General must be considered a party only as being in the management and control of the defendant railroad. Service of process upon his agents, who were formerly the agents of the carrier, is sufficient to bring him into court and to bind him by the proceedings therein." *Owens v. Hines,* 178 N. C., 325. The question as to whether his not being a party defendant by his official title has been properly raised and has been considered, and we held that it had not been under our procedure, and this renders it unnecessary to consider Order No. 50 of Director General McAdoo, issue 28 October, 1918. The general question was somewhat discussed in *Hill v. R. R., supra,* and in *Clements v. R. R.,* 179 N. C., 225, and in other recent cases. In the *Clements case, supra,* at p. 229, the Court said, citing and approving *Johnson v. McAdoo, Director General,* 257 Fed. Rep., 757: "Under act 21 March, 1918, litigants can sue railroad companies under Federal direction just as they were previously able to do, and in such courts as had jurisdiction under the general law," and further: "It is incumbent on the Director General to defend a suit against a road and make payment in the event of recovery out of his receipts; the question of adjustment as between the Government and the railroad will come up for settlement when the roads shall be returned to their owners or otherwise disposed of." Whether the Director General should be formally a party may not become a practical question, as if the present judgment is allowed to stand, it will no doubt be satisfied by him, or defendant will be fully indemnified, as in the case of other judgments, where he has been such a party.

We now proceed to consider the assignments of error:

1 and 2. These refer to the motions for a nonsuit. They were properly disallowed, as there was evidence for the jury. Plaintiff alleges two causes of action, though in one section of the complaint. The first is that defendants' ticket agent wrongfully refused to sell her a lower reservation, when he had one for sale; and second, that he treated her

with wanton rudeness and insult when he did so refuse. There was
ample evidence to sustain at least one of these causes of action, and,
therefore, the motion was properly denied. The motion extended to all
the causes, and therefore, if bad as to one, it is bad as to both, not that
defendant could not move to nonsuit or dismiss as to one, so as to elimi-
nate it from the case, but he is confined to that one. It depends upon
the scope of the demurrer. Where the motion is general, embracing
all causes of action, if any one is good, it should not be granted. Plain-
tiff testified that the agent "tossed the ticket back in her face" in a very
rude and insolent manner. This was an assault, and would sustain an
action. It is held in *White v. R. R.,* 115 N. C., 631, at pp. 636-637, that
the liability of the defendant railroad company rests upon the obligation
on the carrier not only to carry its passengers safely, but to protect them
from ill treatment from other passengers, intruders, or employees.
"Kindness and decency of demeanor is a duty not limited to the officers,
but extends to the crew," said *Judge Story* in *Chamberlain v. Chandler,*
3 Mason, 242. Passengers do not contract merely for accommodation
and transportation from one point to another; the contract includes
assurance of good treatment and against personal rudeness and every
wanton interference with their persons, either by the carrier or his agents
employed in the management of the railroad train or other conveyance.
In respect to such treatment of passengers, not merely officers, but the
crew, are agents of the carriers. It is among the implied provisions of
the contract between passengers and a railroad company that the latter
has employed suitable servants to run its trains, who will accord proper
treatment to them; and a violation of this implied duty or ·contract
is actionable in favor of the passenger injured by its breach, although
the act of the servant was willful and malicious, as in the case of a
malicious assault upon a passenger, committed by any of the train hands,
whether within the line of his employment or not. The duty of the
carrier towards a passenger is contractual, and, among other implied
obligations, is that of protecting a passenger from insults or assaults
by other passengers or by their own servants. Many authorities are
said, in *White's case, supra,* to sustain this doctrine. See, also, 2 Wood
on Railways, sec. 315; *Seawell v. R. R.,* 132 N. C., 856 (*S. c.,* 133 N. C.,
515); *Britton v. R. R.,* 88 N. C., 536; *Manning v. R. R.,* 122 N. C., 824;
*Williams v. Gill, ibid.,* 967. This Court held in *Strother v. R. R.,* 123
N. C., 197, that a carrier is liable for an insulting proposition by one
of its conductors to a female passenger, although induced by her im-
modest remark and behavior.

3 and 4. The objections to the instructions of the Court cannot be
sustained, as each of them contained more than one proposition, and
at least one of them, if not all, was correct. The objection must be

valid as to all of them. *Harris v. Harris,* 178 N. C., 7, at p. 9, citing *S. v. Ledford,* 133 N. C., 714, and other cases. The exception should have pointed out the alleged error. But though they are, therefore, not before us, we are of the opinion that there was no error in the instructions as given. Again, the charge is not in the record and no exceptions to it appear. Every assignment of error must be based upon an exception duly taken. *Harrison v. Dill,* 169 N. C., 542.

5. This assignment is radically defective, as the prayers, which are alleged to have been requested, are not set out, nor is the substance of them stated. But if this assignment refers to the defendant's prayer, appearing in another part of the case, as to the failure of the judge to charge the jury that, if they believed the evidence, to answer the issue "No," we have already substantially and we think fully considered the same question before in this opinion on the motion to nonsuit.

6. The refusal of the court to set aside the verdict because against the weight of the evidence is not reviewable here, unless the discretion of the judge was grossly abused, which is not suggested by appellant.

7. Motion in arrest of judgment does not lie in this case. We have discovered nothing to which it can apply. There is a good cause of action stated, as we have shown.

The other exception is merely formal.

Having carefully reviewed the case, no reversible error can be found.

No error.