WALLACE D. BOWLING AND WIFE, ELLA G. BOWLING, AND S. S. ROYSTER, TRUSTEE, v. THE CITY OF OXFORD
AND
SOUTHERN RAILWAY COMPANY v. THE CITY OF OXFORD.

(Filed 16 June, 1966.)

**1. Trial § 21—**

    On motion to nonsuit, plaintiff's evidence must be taken as true and interpreted in the light most favorable to him, giving him the benefit of every reasonable inference deducible therefrom.

**2. Municipal Corporations § 10—**

When a municipality engages in an activity which is not an exercise of its governmental function but is proprietary in nature, the municipality, like an individual or a privately owned corporation engaged in the same activity, is liable in damages for injury to persons or property due to its negligence or other wrongful act in the conduct of such activity.

**3. Municipal Corporations §§ 5, 15—**

A municipal waterworks system, including its reservoir as well as its distribution system, when maintained for the sale of water for private consumption, is operated in the city's proprietary capacity, notwithstanding that it also operates the waterworks system to supply water for fire protection or for the washing of its streets.

**4. Waters and Watercourses § 4—**

One who constructs and maintains a dam to impound waters into a reservoir is not an insurer against damage by the breaking of the dam and the escape of such water, but is liable for damages resulting from the breaking of the dam only if he is negligent in the original construction or subsequent maintenance of the dam.

**5. Negligence § 5—**

When applicable, the rule of *res ipsa loquitur* does not relieve plaintiff from the burden of proving negligence and creates no presumption of negligence, but merely makes proof of the facts invoking the doctrine sufficient to establish a *prima facie* case so as to place upon defendant the burden of going forward with evidence to explain the occurrence.

**6. Municipal Corporations § 15;     Waters and Water Courses § 4— Evidence of negligence in maintenance of dam held sufficient for jury in action for damages resulting from break in dam.**

Evidence tending to show that for a long period prior to the collapse of defendant municipality's dam, defendant knew that a sizeable stream of water was running from a point at the foot of the earthen dam and that water was seeping through the dam around a drain pipe, that approximately a month prior to the dam's collapse the municipality was notified that water sufficient in volume to fill to half capacity two 24-inch culverts was flowing away from the foot of the dam and that its source was neither an escape of water through the valve of the drain pipe nor recent rainfall, and that for two days prior to the collapse of the dam the volume of water flowing away from the foot thereof was increasing and was muddy in color, *held* sufficient to be submitted to the jury on the issue of the municipality's negligence in the maintenance of the dam in actions to recover for damages resulting to lower proprietors from the sudden release of the water from the breaking of the dam.

**7. Municipal Corporations § 40—**

The filing of a claim with a city before suit is not necessary when the action is brought for damages for a tort committed by the city in the exercise of a proprietary activity. G.S. 1-53, G.S. 153-64.

**8. Parties § 2—**

The trustee in a deed of trust upon the land is not a necessary party to an action by the owner of the land to recover for damages to the land.

**9. Same—**

The failure of defendant to demur is a waiver of his right to insist that another party should have been joined as a necessary additional party plaintiff.

MOORE, J., not sitting.

APPEALS by plaintiffs from *Latham, S.J.,* at the October 1965 Session of GRANVILLE.

These are two suits for damages to the properties of the plaintiffs alleged to have been caused by the breaking of a dam maintained by the defendant. The cases were consolidated for trial. At the close of the evidence offered by the plaintiffs a judgment of nonsuit was entered in each case. From these judgments the plaintiffs appeal.

Mr. and Mrs. Bowling were the owners of a farm lying downstream from the dam. The additional plaintiff Royster is trustee in two deeds of trust upon the Bowling farm. Upon his own motion he was permitted to become a party plaintiff in the Bowling case, adopting as his own the pleadings filed by the Bowlings. The plaintiff Railway Company was the owner of a trestle downstream from the Bowling farm.

The pleadings in the two cases are substantially the same. The complaint in each undertakes to state two causes of action, one based upon negligence and the other upon trespass.

The allegations of the complaints may be summarized as ·follows:

On and for several years prior to 1 July 1962, the city of Oxford owned a water reservoir known as Lake Devin, the water being impounded therein by an earthen dam. The city sold water from the reservoir to its residents and to nonresidents. On 1 July 1962, the dam broke. A great torrent of water rushed through the breach, flooded portions of the Bowling farm, washed away and otherwise damaged buildings, trees, crops, fences and other properties on the farm and deposited upon it quantities of boulders, stones and other undesirable debris. The trestle of the railroad was undermined and its road bed badly washed and eroded. For a long period of time prior to the break, there had been a leak in the dam of which the city knew, or of which it should have known by the exercise of reasonable care, and which it failed to correct. For several hours before the dam broke the leak had grown larger. The city knew, or should have known, the enlarging leak created a hazard to persons and properties below the dam. It failed to lower the water level in the lake so as to reduce the pressure on the dam. Both the railroad

and the Bowlings filed claims with the city, no action thereon being taken by the city.

In each case, the city filed answer denying every material allegation of the complaint and asserting as further defenses: It is immune from liability for either negligence or trespass for the reason that it constructed, operated and maintained the reservoir in the exercise of a governmental function; the right of action is barred by the statute of limitations; all defects in the dam were unknown to the city and could not have been and were not discovered by reasonable inspection and maintenance of the dam; and if any trespass was committed the city was not at fault and could not have prevented such trespass by the exercise of reasonable prudence and care.

The evidence offered by the plaintiffs, in addition to that showing the filing of claims and the city's failure to take action thereon and showing the nature and extent of the damage, may be summarized as follows:

The city maintained Lake Devin as a water reservoir, selling water therefrom to residents and nonresidents through its waterworks system. It impounded the water therein by an earthen dam 800 feet long and 40 feet high at its highest part. The water of the lake covered approximately 110 acres. Running through the dam were a 14 inch pipe, carrying water to the city's filtration plant below the dam, and a drain pipe. Below the dam the stream bed ran under a highway and thence through the Bowling property and under the railroad trestle. At approximately 8 p.m. on Sunday, 1 July 1962, a section of the dam, approximately 40 feet wide, collapsed. All of the water in the lake rushed out, flooding the Bowling farm and damaging the trestle. For seven or eight months prior to the breaking of the dam, the City Manager had observed a one inch stream of water coming out from what appeared to him to be solid ground at a point on the hillside 25 to 30 feet above the lowest point of the dam. He called engineers who went to the dam and did some drilling. Thereupon the engineers advised the Manager that there was nothing to worry about since this was an underground spring.

Shortly after the dam was built, this being several years before it broke, water leaked through the drain pipe by reason of a defect in a cement structure around the gate and valve by which the water entered the drain pipe. This structure was below the surface of the lake and some 30 feet out into the lake from the dam. The city did not drain the lake to locate and correct this defect, but installed a cut-off valve on the outside end of the drain pipe. This stopped the flow of water through the pipe. There was, however, some

seepage around the pipe thereafter. The water which leaked through the drain pipe prior to the installation of the second valve ran on down the stream bed below the dam. The water which thereafter seeped around the pipe and the one inch stream of water coming from the point up on the hillside also found its way to this stream bed below the dam.

After the dam broke, the pipe which ran through the dam and carried water from the reservoir to the filtering plant appeared not to have been disturbed by the outpouring water. A crack in one joint of this pipe which ran through the dam was then discovered. Other pipes which had led through the dam were found broken up and at a substantial distance below the dam after the flood of water had passed.

Two days before the dam broke, a witness, whose property also lay below the dam and who frequently passed along the highway running near its foot, noticed that the volume of water running under the highway and down the stream bed was larger than customary, and that the stream was red and muddy. It appeared as if the valve on the drain pipe had been opened. For some time this witness had noticed a leak around the drain pipe and also the leak coming from a point higher up on the abutting hill which the City Manager had observed. This stream, which the City Manager so observed, was described by this witness as coming from under the dam at a point up on the abutting hillside. When the dam broke, the water first came from under the dam. Then the section of the dam caved in and was swept away. Both the leak up on the hillside and that around the drain pipe had been observed by this witness for at least several months before the dam broke.

On the morning of the day on which the dam broke, Mr. Bowling noted that the volume of water flowing down the stream bed through his land was larger than usual and was of a red and muddy color. Prior to this, he had noticed the earth around the lower portion of the dam was very moist but had not noticed any increase in the volume of water passing down the stream bed.

During the month of June, 1962, the State Highway Commission had occasion to do work upon two 24 inch culverts running under its road below the dam. At that time each of these culverts was half full of cloudy water though there had been only a little rain during the preceding week. The superintendent of the highway crew requested the City Manager to cut the water off. The City Manager replied that he could not since it was not leaking through the valve.

The only question on appeal is the sufficiency of the evidence to withstand a motion for judgment as of nonsuit.

*Royster & Royster for appellants Wallace D. Bowling and wife, Ella G. Bowling, and S. S. Royster, Trustee.*

*Royster & Royster; Hicks & Taylor and W. T. Joyner for appellant Southern Railway Company.*

*Watkins & Edmundson and Zollicoffer & Zollicoffer for defendant appellee.*

LAKE, J. Upon a motion for judgment as of nonsuit the evidence offered by the plaintiff must be taken to be true and must be interpreted in the light most favorable to the plaintiff. Every reasonable inference favorable to the plaintiff must be drawn therefrom.

When a city or town engages in an activity which is not an exercise of its governmental function but is proprietary in nature, the city, like an individual or a privately owned corporation engaged in the same activity, is liable in damages for injury to persons or property due to its negligence or other wrongful act in the conduct of such activity. *Glenn v. Raleigh,* 246 N.C. 469, 98 S.E. 2d 913; *Britt v. Wilmington,* 236 N.C. 446, 73 S.E. 2d 289; *Millar v. Wilson,* 222 N.C. 340, 23 S.E. 2d 42. Barnhill, J., later C.J., speaking for the Court, in the *Britt* case said:

> "[G]enerally speaking, the distinction is this: If the undertaking of the municipality is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and 'private' when any corporation, individual, or group of individuals could do the same thing. Since, in either event, the undertaking must be for a public purpose, any proprietary enterprise must, of necessity, at least incidentally promote or protect the general health, safety, security or general welfare of the residents of the municipality."

When a municipal corporation operates a system of waterworks for the sale by it of water for private consumption and use, it is acting in its proprietary or corporate capacity and is liable for injury or damage to the property of others to the same extent and upon the same basis as a privately owned water company would be. *Mosseller v. Asheville,* 267 N.C. 104, 147 S.E. 2d 558; *Faw v. North Wilkesboro,* 253 N.C. 406, 117 S.E. 2d 14; *Candler v. Asheville,* 247 N.C. 398, 101 S.E. 2d 470; *Woodie v. North Wilkesboro,* 159 N.C. 353, 74 S.E. 924; McQuillan, Municipal Corporations, 3d Ed., § 53.104; Dillon, Municipal Corporations, 5th Ed., § 1631; 56 Am. Jur., Waterworks, § 38. There is no distinction, in this respect, between negligence, or other wrongful act, by the city in the construction or maintenance of the reservoir in which the water is

impounded and like acts or omissions in the construction or maintenance of the system of mains and pipes by which the water is distributed to the consumers, both the reservoir and the distribution system being part of the water plant owned and maintained for the same commercial or proprietary purpose. See: *Wiltse v. City of Red Wing,* 99 Minn. 255, 109 N.W. 114; *Bailey v. New York,* 3 Hill (N. Y. Sup. Ct.) 531; Dillon, Municipal Corporations, 5th Ed., § 1669. It is also immaterial that one purpose of the reservoir or the water main is to supply water for fire protection or for washing the streets. See: *Fisher v. New Bern,* 140 N.C. 506, 53 S.E. 342; McQuillan, *op. cit., supra.*

Although there is authority to the contrary *(Wiltse v. City of Red Wing, supra,* and *Lumber Co. v. Power Co.,* 206 N.C. 515, 174 S.E. 427), one who constructs and maintains a dam to impound the waters of a river or other stream into a reservoir from which the water is to be distributed and sold is not an insurer against damage by the breaking of the dam and the escape of such water. *Comrs. v. Jennings,* 181 N.C. 393, 107 S.E. 312; 56 Am. Jur., Waters, § 170. He is not liable for such damage unless he was negligent in the original construction or subsequent maintenance of the dam. In *Lumber Co. v. Power Co., supra,* there was ample evidence of negligence by the defendant in opening gates on the dam so as to permit the escape of a huge torrent of water which washed out the plaintiff's bridge.

In *Schloss v. Hallman,* 255 N.C. 686, 122 S.E. 2d 513, Denny, J., later C.J., speaking for the Court, said:

"In Restatement of the Law of Torts, section 166, page 394, it is said: 'Except where the actor is engaged in an extra-hazardous activity, an unintentional and non-negligent entry on land in the possession of another or causing a thing or third person to enter the land, does not subject the actor to liability to the possessor, even though the entry causes harm to the possessor or to a thing or third person in whose security the possessor has a legally protected interest.' "

Thus, though the water from the broken dam flooded over and damaged the properties of the plaintiffs, the city cannot be held liable for the resulting damage unless in the construction or maintenance of the dam the city was negligent.

In the annotation appearing in 11 A.L.R. 2d 1179, 1192, it is said:

"Dams on natural watercourses are usually deemed to be within the control of the owner, and the manner of their con-

struction and care to be peculiarly within his knowledge, in such degree that evidence merely of the giving way of a dam maintained by the defendant, and the flooding of the plaintiff's lands as a result, calls for application of the rule *res ipsa loquitur.*"

To the same effect see 93 C.J.S., Waters, § 156. When applicable, this rule of *res ipsa loquitur* does not relieve the plaintiff from the burden of proving negligence by the defendant in the construction or maintenance of the dam. It does not create a presumption that the defendant was negligent. It merely makes proof of the facts that the dam broke and that damage to the plaintiff was proximately caused thereby sufficient to establish a *prima facie* case of injury by negligence so as to place upon the defendant the burden of going forward with evidence to explain the occurrence. *White v. Hines,* 182 N.C. 275, 109 S.E. 31.

We need not now determine whether the unexplained collapse of a dam, and injury to the property of the plaintiffs as the direct result thereof, is sufficient to call into play the rule of *res ipsa loquitur* and thus to withstand a motion for judgment as of nonsuit. In the record before us, there is evidence tending to show that, for a long period prior to the collapse of the dam, the defendant knew a sizeable stream of water was running from a point at which the foot of this earthen dam rested upon the abutting hillside and also knew that water was seeping through the dam in the vicinity of the drain pipe. There is also evidence tending to show that, approximately a month prior to the collapse of the dam, the city was notified by the superintendent of a highway construction crew that water in sufficient volume to fill to half capacity two 24 inch culverts was flowing away from the foot of the dam and that its source was neither an escape of water through the valve of the drain pipe nor recent rainfall. There is also evidence tending to show that for two days prior to the collapse of the dam the volume of water flowing away from the foot of it was increasing and was of a muddy color. This is sufficient to raise a question for determination by the jury as to whether a reasonable man in charge of such a dam would have taken action to locate and correct the leak. Whether such evidence is true and what, if any, inference is to be drawn therefrom must be determined by the jury. Viewing this evidence in the light most favorable to the plaintiffs and drawing therefrom all reasonable inferences in their favor, we reach the conclusion that the evidence is sufficient to support a finding that the city was negligent in its maintenance of the dam and that such negligence was the proximate cause of the breaking of the dam and of the damage to the properties of the plaintiffs.

G.S. 1-53 and G.S. 153-64 do not require the filing of a claim with the city before suit may be brought for damages for a tort committed by the city in a proprietary activity. *Dennis v. Albemarle,* 242 N.C. 263, 87 S.E. 2d 561; *reh. dism.,* 243 N.C. 221, 90 S.E. 2d 532; *Sugg v. Greenville,* 169 N.C. 606, 86 S.E. 695. It is, therefore, immaterial that the additional plaintiff, Royster, trustee in the deed of trust from the Bowlings, and the trustee in the deed of trust given by the Railway Company did not file claims with the city. Nor was it necessary that the trustee in the deed of trust given by the Railway Company be made a party to its action. *Watkins v. Mfg. Co.,* 131 N.C. 536, 42 S.E. 983. Although such trustee was a proper party and might have joined in the action by the Railway Company as a party plaintiff, just as the additional plaintiff Royster joined in the action by the Bowlings, he was not a necessary party to the action by the Railway Company. Furthermore, "if the defendant deemed the trustee a necessary party * * * he should have demurred, and his failure to do so was a waiver." *Lanier v. Pullman Co.,* 180 N.C. 406, 105 S.E. 21.

It was error to grant the motion for judgment as of nonsuit as to either plaintiff.

Reversed.

MOORE, J., not sitting.