ESTATE OF ERIK DOMINIC WILLIAMS, by and through EASTER WILLIAMS
OVERTON, Personal Representative, Plaintiff v. PASQUOTANK COUNTY PARKS &
RECREATION DEPARTMENT AND PASQUOTANK COUNTY, Defendants

No. COA10-491

(Filed 3 May 2011)

**Immunity— governmental—proprietary function—operation
of party facilities at public park**

The trial court did not err in a negligence case by denying
defendant county's limited motion for summary judgment based
on governmental immunity because defendant was involved in a
proprietary function in the operation of the party facilities at a
public park.


Appeal by defendant Pasquotank County from order entered 4
November 2009 by Judge Alma L. Hinton in Pasquotank County
Superior Court. Heard in the Court of Appeals 2 November 2010.

*Dixon & Thompson Law PLLC by Sanford W. Thompson, IV and
Samuel B. Dixon and Law Offices of Janice McKenzie Cole
PLLC by Janice M. Cole, for plaintiff-appellee.*

*Teague Campbell Dennis & Gorham, L.L.P. by Henry W.
Gorham and Daniel N. Kluttz, for defendants-appellants.*


STROUD, Judge.

Defendant Pasquotank County appeals the denial of its limited
motion for summary judgment based on governmental immunity. As
we conclude that defendant Pasquotank County was involved in a
proprietary function, we affirm.

I. Background

This action arises out of the death of Mr. Erik Dominic Williams
on 10 June 2007 at Fun Junktion, a public park owned by Pasquotank
County and operated by Pasquotank County Parks & Recreation
Department (collectively "defendants"). The estate of Mr. Williams
brought this suit for negligence against defendants after Mr. Williams
drowned in the "Swimming Hole" which was part of the area rented
out for use by private parties at Fun Junktion. On or about 9
December 2008, defendants answered plaintiff's complaint and

alleged the defenses of governmental and sovereign immunity and contributory negligence. On or about 4 September 2009, defendants filed a motion for limited summary judgment which stated that "[t]he basis of this Motion is that the allegations of the Complaint relate to the performance of governmental functions by Pasquotank County Parks & Recreation Department and Pasquotank County[.]" On 4 November 2009, the trial court denied defendant's motion for limited summary judgment because

> defendants charged and collected a fee from Keith and Cheryl Bowe for their guests, including Erik Williams, for the use of the Fun Junktion park, and defendants were providing the same type of facilities and services that private individuals or corporations could provide, and therefore, defendants were involved in a proprietary activity with respect to the Bowes and their guests such that the defense of governmental immunity does not apply[.]

Defendant Pasquotank County appeals.[1]

## II. Governmental Immunity

Defendant's sole issue on appeal is whether the trial court erred in denying its motion for limited summary judgment based upon governmental immunity. *Owens v. Haywood County* notes that a denial of a motion for summary judgment on this basis is immediately appealable and sets forth the proper standard of review:

> [g]enerally, a moving party may not appeal the denial of a motion for summary judgment because ordinarily such an order is interlocutory and does not affect a substantial right. However, when the motion is made on the grounds of sovereign and qualified immunity, such a denial is immediately appealable, because to force a defendant to proceed with a trial from which he should be immune would vitiate the doctrine of sovereign immunity. In the instant case, defendants have asserted the defense of sovereign immunity and, thus, their appeal is properly before this Court.

> The standard of review on a trial court's ruling on a motion for summary judgment is *de novo*. The entry of summary judgment is appropriate where the pleadings, depositions, answers to

---

1. Throughout the record, various documents refer to defendants, Pasquotank County and Pasquotank County Parks & Recreation, as two separate defendants. While the record does not necessarily demonstrate that these are two separate legal entities, the notice of appeal is *only* as to defendant Pasquotank County. As it makes no difference in our analysis, based upon the notice of appeal, we will refer only to defendant Pasquotank County hereafter.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. All inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion. Summary judgment is proper when an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense.

*Owen v. Haywood County*, —— N.C. App. ——, ——, 697 S.E.2d 357, 358-59 (citations, quotation marks, ellipses, and heading omitted), *disc. review denied*, —— N.C. ——, 705 S.E.2d 361 (2010).

A. Liability Insurance

Defendant first contends that "[d]efendants did not waive the defense of governmental immunity by the purchase of liability insurance[.]" Plaintiffs' brief states that this point "is not disputed now, and was not disputed when the summary judgment motion was heard. Plaintiff-Appellee does not contend that purchase of insurance constituted a waiver of governmental immunity." As plaintiffs concede that defendants purchase of liability insurance did not waive governmental immunity and as the trial court's denial of defendants' limited motion for summary judgment was not based upon defendants' liability insurance, we need not address this issue.

B. Proprietary Function

Defendants next contend that because Fun Junktion is a public park and because operating public parks is a governmental function pursuant to N.C. Gen. Stat. § 160A-351, "governmental immunity bars plaintiff's claim." *See* N.C. Gen. Stat. § 160A-351 (2007) ("[T]he creation, establishment, and operation of parks and recreation programs is a proper governmental function[.]"). However, "governmental immunity covers only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions." *Evans v. Housing Auth. of City of Raleigh*, 359 N.C. 50, 53, 602 S.E.2d 668, 670 (2004). "Governmental immunity shields a state entity in the performance of governmental functions, but not proprietary functions." *Willett v. Chatham Cty. Bd. of Educ.*, 176 N.C. App. 268, 270, 625 S.E.2d 900, 902 (2006). What qualifies as a governmental function and what qualifies as a proprietary function is not always clear; our Supreme Court noted in *Sides v. Hospital*, that "application of the governmental-proprietary distinction to given factual situations has

resulted in irreconcilable splits of authority and confusion as to what functions are governmental and what functions are proprietary." 287 N.C. 14, 22, 213 S.E.2d 297, 302 (1975) (quotation marks and brackets omitted), *superseded by statute on other grounds as recognized by Odom v. Clark*, 192 N.C. App. 190, 668 S.E.2d 33 (2008). From these "irreconcilable splits of authority[,]" *id.*, we will attempt to distill the controlling law from our previous cases and provide a coherent framework for future application.

*Britt v. Wilmington* provides that

> [a]ny activity of the municipality which is discretionary, political, legislative, or public in nature and performed for the public good in behalf of the State rather than for itself comes within the class of governmental functions. When, however, the activity is commercial or chiefly for the private advantage of the compact community, it is private or proprietary.
>
> . . . .
>
> When a municipality is acting in behalf of the State in promoting or protecting the health, safety, security or general welfare of its citizens, it is an agency of the sovereign. When it engages in a public enterprise essentially for the benefit of the compact community, it is acting within its proprietary powers. In either event it must be for a public purpose or public use.
>
> So then, generally speaking, the distinction is this: If the undertaking of the municipality is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and private when any corporation, individual, or group of individuals could do the same thing. Since, in either event, the undertaking must be for a public purpose, any proprietary enterprise must, of necessity, at least incidentally promote or protect the general health, safety, security, or general welfare of the residents of the municipality.

236 N.C. 446, 450-51, 73 S.E.2d 289, 293 (1952) (citation and quotation marks omitted).

> In applying the *Britt* test, this Court has held, charging a substantial fee to the extent that a profit is made is strong evidence that the activity is proprietary. However, a profit motive is not the sole determinative factor when deciding whether an activity is governmental or proprietary. Instead, courts look to see whether an undertaking is one traditionally provided by the local governmental units.

*Willett*, 176 N.C. App. at 270, 625 S.E.2d at 902 (citations, quotation marks, and brackets omitted). Thus, when considering whether a municipality has engaged in a governmental or a proprietary function, prior cases have considered: (1) "whether an undertaking is one *traditionally* provided by the local governmental units[;]" *id.* (emphasis added), (2) "[i]f the undertaking of the municipality is one in which *only* a governmental agency could engage" or if "any corporation, individual, or group of individuals could do the same thing[;]" *Britt*, 236 N.C. at 451, 73 S.E.2d at 293 (emphasis added), (3) whether the county charged "a substantial fee[;]" *Willett*, 176 N.C. App. at 270, 625 S.E.2d at 902, and (4) if a fee was charged, whether a profit was made. *See id.* Not all of these factors must be present for a function to be proprietary, but the second of these considerations is the most important. *See Evans* at 54, 602 S.E.2d at 671 ("We have provided various tests for determining into which category a particular activity falls, but have consistently recognized one guiding principle: Generally speaking, the distinction is this: If the undertaking of the municipality is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and private when any corporation, individual, or group of individuals could do the same thing." (quotation marks and brackets omitted)).

Defendant describes Fun Junktion as a public park that "contained numerous facilities, including a pavilion, picnic tables, playground, and pond[.]" As to the first factor, whether the activity is one traditionally provided by local governments, *Willett*, 176 N.C. App. at 270, 625 S.E.2d at 902, certainly public parks are a function traditionally provided by the government. *See Hare v. Butler*, 99 N.C. App. 693, 698, 394 S.E.2d 231, 235 ("Certain activities are clearly governmental such as . . . public parks[.]"), *disc. review denied*, 327 N.C. 634, 399 S.E.2d 121 (1990).

As to the second factor, it is equally clear that not all parks are operated by governmental units. "[A]ny corporation, individual, or group of individuals could" operate similar recreational facilities which may be rented for private use. *Britt*, 236 N.C. at 451, 73 S.E.2d at 293. While defendant appears to argue that all activities provided within a public park are governmental functions pursuant to N.C. Gen. Stat. § 160A-351, our Supreme Court has previously determined municipalities may perform proprietary functions within public parks. *See, e.g., Glenn v. Raleigh*, 246 N.C. 469, 98 S.E.2d 913 (1957) (determining that a public park did not have governmental immunity from a rock thrown from a mower which hit the plaintiff on the head

while he was sitting at a table in the public park). Thus, a public park may include activities which are governmental and protected by governmental immunity as well as proprietary functions which are not.

As to the third and fourth factors, defendant charged $75.00 for the use of Fun Junktion for a private party but did not make a profit from the rental fees for Fun Junktion. Defendant states in its brief that "[f]or the fiscal year 1 July 2006 through 30 June 2007, Pasquotank County spent $160,384 operating Fun Junktion and received only $2,052 in revenues from its operation . . ., a ratio of revenue to expenditures of 1.3%." Thus, defendant was involved in a traditional government function that could be performed by private entities and did so for a substantial fee although it did not make a profit. In weighing the application of the factors to this case, we are mindful that the second factor is the most important, as the "guiding principle" is "[i]t is proprietary and private when any corporation, individual, or group of individuals could do the same thing." *Evans*, 359 N.C. at 54, 602 S.E.2d at 671. Accordingly, we conclude that defendant was involved in a proprietary function in the operation of the party facilities at Fun Junktion.

### III. Conclusion

As we conclude that defendant was engaging in a proprietary function, we affirm the trial court's denial of summary judgment.

AFFIRMED.

Judges BRYANT and BEASLEY concur.