ESTATE OF ERIK DOMINIC WILLIAMS, BY AND THROUGH EASTER WILLIAMS OVERTON, PERSONAL REPRESENTATIVE v. PASQUOTANK COUNTY PARKS & RECREATION DEPARTMENT AND PASQUOTANK COUNTY

No. 231PA11

(Filed 24 August 2012)

**Immunity— governmental immunity—negligence—services provided by nongovernmental entities—fact intensive inquiry**

The Court of Appeals erred in a negligence case by denying defendants' limited motion for summary judgment based upon governmental immunity. It appeared that the decision that defendants were not entitled to governmental immunity turned solely or predominantly upon the fact that the services defendants provided could also be provided by nongovernmental entities. The proper designation of a particular action of a county or municipality is a fact intensive inquiry and may differ from case to case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, —— N.C. App. ——, 711 S.E.2d 450 (2011), affirming an order denying defendants' limited motion for summary judgment entered on 4 November 2009 by Judge Alma L. Hinton in Superior Court, Pasquotank County. Heard in the Supreme Court on 12 March 2012.

*Dixon & Thompson Law PLLC, by Sanford W. Thompson, IV and Samuel B. Dixon; and Law Offices of Janice McKenzie Cole PLLC, by Janice M. Cole, for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, LLP, by Burley B. Mitchell, Jr. and Robert T. Numbers, II, for defendant-appellants.*

*Wanda M. Copley, County Attorney, and Sharon J. Huffman, Assistant County Attorney, for New Hanover County; and Nelson Mullins Riley & Scarborough, LLP, by Leon Killian, III, for Haywood County, amici curiae.*

*Sharon G. Scudder, General Counsel, for North Carolina Association of County Commissioners, amicus curiae.*

*Walker, Allen, Grice, Ammons & Foy, L.L.P., by Jerry A. Allen, Jr., for North Carolina Association of EMS Administrators, amicus curiae.*

*Kimberly S. Hibbard, General Counsel, and Gregory F. Schwitzgebel, III, Senior Assistant General Counsel, for North Carolina League of Municipalities, amicus curiae.*

*Allison B. Schafer, General Counsel; and Yates, McLamb & Weyher, L.L.P., by Barbara B. Weyher and Andrew C. Buckner, for North Carolina School Boards Association, amicus curiae.*

*Edmond W. Caldwell, Jr., General Counsel, for North Carolina Sheriffs' Association, amicus curiae.*

*Roger A. Askew, Deputy County Attorney, and Scott W. Warren, County Attorney, for Wake County; and Michael Frue, County Attorney, for Buncombe County, amici curiae.*

TIMMONS-GOODSON, Justice.

In this case we consider whether the trial court erred in denying a motion for summary judgment based upon governmental immunity. We take this opportunity to restate our jurisprudence of governmental immunity and, in light of our restatement, we vacate and remand the decision of the Court of Appeals for further remand to the trial court for proceedings not inconsistent with this opinion. In reaching our conclusion, we express no opinion whether defendants in this case, Pasquotank County and the Pasquotank County Parks & Recreation Department, are entitled to governmental immunity.

## I. Background

Erik Dominic Williams drowned at a public park on 10 June 2007. The park, Fun Junktion, was owned by defendant Pasquotank County and maintained and operated by defendant Pasquotank County Parks & Recreation Department. Williams's estate filed a claim against defendants alleging that, as a result of defendants' negligence, Williams drowned in the "Swimming Hole," an area rented out to private

parties at Fun Junktion. On 9 December 2008, defendants answered plaintiff's complaint denying any negligence and alleging the affirmative defenses of governmental immunity, sovereign immunity, and contributory negligence. On 4 September 2009, defendants made a limited motion for summary judgment, contending that Williams's allegations were barred by the doctrines of governmental and sovereign immunity. The trial court denied defendants' limited motion for summary judgment, concluding that they were not entitled to governmental immunity because "defendants charged and collected a fee" "for the use of the Fun Junktion park, and defendants were providing the same type of facilities and services that private individuals or corporations could provide."

A unanimous panel of the Court of Appeals affirmed. The panel reasoned that governmental immunity applies to counties and municipalities acting in the performance of governmental, rather than proprietary, functions. *See Estate of Williams v. Pasquotank Cnty. Parks & Rec. Dep't,* —— N.C. App. ——, ——, 711 S.E.2d 450, 452 (2011). To determine whether a function is governmental or proprietary, the Court of Appeals articulated a four-factor test considering: (1) whether an undertaking is one traditionally provided by local governments; (2) if the undertaking is one in which only a governmental agency could engage, or if any corporation, individual, or group of individuals could do the same thing; (3) whether the governmental unit charged a substantial fee; and (4) if a fee was charged, whether a profit was made. *Id.* at ——, 711 S.E.2d at 453 (citations and internal quotation marks omitted). The Court of Appeals described the second factor—whether nongovernmental actors could perform the same function provided by the county or municipality—as the "most important." *Id.* at ——, 711 S.E.2d at 453.

The Court of Appeals then applied these four factors, concluding that: (1) public parks have traditionally been provided by local government; (2) public parks could be provided by private, as well as public, entities; (3) defendants charged a fee ($75.00) for the use of Fun Junktion, though (4) defendants did not make a profit as a result of charging this or other rental fees for Fun Junktion. *Id.* at ——, 711 S.E.2d at 453-54. The Court of Appeals again opined that "the second factor is the most important" and concluded that "defendant was involved in a proprietary function in the operation of the party facilities at Fun Junktion." *Id.* at ——, 711 S.E.2d at 454. Accordingly, the Court of Appeals affirmed the trial court's denial of defendants' motion for summary judgment. *Id.* at ——, 711 S.E.2d at 454.

## II. Analysis

In this case we review the trial court's denial of a motion for summary judgment. A motion for summary judgment "shall be" granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). We review the grant or denial of a motion for summary judgment de novo. *E.g.; Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs.*, LLC, —— N.C. ——, ——, 723 S.E.2d 744, 747 (2012); *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004).

Our jurisprudence has recognized the rule of governmental immunity for over a century. *See Moffitt v. City of Asheville*, 103 N.C. 191, 203-04, 103 N.C. 237, 254-55, 9 S.E. 695, 697 (1889) (adopting the doctrine of governmental immunity); *see also Koontz v. City of Winston-Salem*, 280 N.C. 513, 519, 186 S.E.2d 897, 902 (1972) (emphasizing that "[t]his Court has not departed from the rule of governmental immunity adopted in the year 1889 in the case of *Moffitt v. Asheville*"). Under the doctrine of governmental immunity, a county or municipal corporation " 'is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity.' " *Evans ex rel. Horton v. Hous. Auth.*, 359 N.C. 50, 53, 602 S.E.2d 668, 670 (2004) (quoting *Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997)); *Moffitt*, 103 N.C. at 203, 103 N.C. at 254-55, 9 S.E. at 697 (stating a city or town "incurs no liability for the negligence of its officers" acting under authority conferred by its charter or for the sole benefit of the public).

This principle is derived from English law and is based on the premise that, as the creator of the law, "the king could do no wrong." *Steelman v. City of New Bern*, 279 N.C. 589, 592, 184 S.E.2d 239, 241 (1971). While we have acknowledged that this rationale is not as persuasive as it once was, this Court has declined to abrogate the common law doctrine of governmental immunity. Instead, we have reasoned that any change in our common law is more properly a task for the legislature.

More specifically, this Court has expressed the following:

> We suggested in *Steelman v. City of New Bern*, "It may well be that the logic of the doctrine of sovereign immunity is unsound and that the reasons which led to its adoption are

not as forceful today as they were when it was adopted." 279 N.C. at 595; 184 S.E. 2d at 243. However, we declined to abrogate a municipality's governmental immunity from tort liability for the negligence of its agents acting in the scope of their authority. The rationale was that, albeit the doctrine was "judge-made," the General Assembly had recognized it as the public policy of the State by enacting legislation which permitted municipalities and other governmental bodies to purchase liability insurance and thereby waive their immunity to the extent of the amount of insurance so obtained. *Id.* at 594-96, 184 S.E. 2d at 242-43.

*Smith v. State*, 289 N.C. 303, 312, 222 S.E.2d 412, 418-19 (1976).

Nevertheless, governmental immunity is not without limit. "[G]overnmental immunity covers *only* the acts of a municipality or a municipal corporation committed pursuant to its governmental functions." *Evans*, 359 N.C. at 53, 602 S.E.2d at 670 (emphasis added) (citations omitted). Governmental immunity does not, however, apply when the municipality engages in a proprietary function. *Town of Grimesland v. City of Washington*, 234 N.C. 117, 123, 66 S.E.2d 794, 798 (1951) ("[W]hen a municipal corporation undertakes functions beyond its governmental and police powers and engages in business in order to render a public service for the benefit of the community for a profit, it becomes subject to liability for contract and in tort as in case of private corporations.") (citing, *inter alia*, *Millar v. Town of Wilson*, 222 N.C. 340, 23 S.E.2d 42 (1942)). In determining whether an entity is entitled to governmental immunity, the result therefore turns on whether the alleged tortious conduct of the county or municipality arose from an activity that was governmental or proprietary in nature.

We have long held that a "governmental" function is an activity that is "discretionary, political, legislative, or public in nature and performed for the public good in behalf of the State rather than for itself." *Britt v. City of Wilmington*, 236 N.C. 446, 450, 73 S.E.2d 289, 293 (1952) (citing *Millar*, 222 N.C. at 341, 23 S.E.2d at 44). A "proprietary" function, on the other hand, is one that is "commercial or chiefly for the private advantage of the compact community." *Id.; see also Evans*, 359 N.C. at 54, 602 S.E.2d at 671 (describing the test set forth in *Britt* as our "one guiding principle").

Our reasoning when distinguishing between governmental and proprietary functions has been relatively simple, though we have

acknowledged the difficulties of making the distinction. *Evans*, 359 N.C. at 54, 602 S.E.2d at 671 ("The difficulties of applying this principle have been noted." (citations omitted)). "When a municipality is acting 'in behalf of the State' in promoting or protecting the health, safety, security, or general welfare of its citizens, it is an agency of the sovereign. When it engages in a public enterprise essentially for the benefit of the compact community, it is acting within its proprietary powers." *Britt*, 236 N.C. at 450-51, 73 S.E.2d at 293.

Our case law demonstrates that a number of factors are relevant when ascertaining whether action undertaken by a county or municipality is governmental or proprietary in nature. First, in deference to our tripartite system of government, the appellate courts of this State should consider whether our legislature has designated the particular function at issue as governmental or proprietary. For example, in *Evans ex rel. Horton v. Housing Authority of the City of Raleigh* we considered the Housing Authorities Law, codified at N.C.G.S. §§ 157-1 to -39.8 (2003), in holding that a housing authority was protected by governmental immunity against allegations of lead paint-based injuries. 359 N.C. at 55-56, 602 S.E.2d at 671-72.

Specifically, we noted that in enacting the Housing Authorities Law at issue, the General Assembly provided

"that unsanitary or unsafe dwelling accommodations exist in urban and rural areas throughout the State . . . ; that these conditions cannot be remedied by the ordinary operation of private enterprise; that the . . . providing of safe and sanitary dwelling accommodations for persons of low income are *public uses and purposes for which public money may be spent* and private property acquired; . . . and that the necessity for the provisions hereinafter enacted is hereby declared as a matter of legislative determination to be in the public interest."

*Id.* at 55, 602 S.E.2d at 672 (alterations in original) (citing N.C.G.S. § 157-2(a) (2003)). We considered the emphasized language a significant "statutory indication that the provision of low and moderate income housing is a governmental function." *Id.*

We therefore conclude that the threshold inquiry in determining whether a function is proprietary or governmental is whether, and to what degree, the legislature has addressed the issue. This is especially so given our pronouncement in *Steelman v. City of New Bern* that any change in the common law doctrine of governmental immu-

nity is a matter for the legislature. 279 N.C. at 595, 184 S.E.2d at 243 ("[W]e feel that any further modification or the repeal of the doctrine of sovereign immunity should come from the General Assembly, not this Court.").

Defendants contend that N.C.G.S. § 160A-351 is dispositive in this case because it asserts that "the operation of public parks is a 'proper governmental function.'" North Carolina's Recreation Enabling Law, codified in section 160A-351, gives municipalities the power to create, fund, and maintain recreation facilities. Section 160A-351 states the following:

> The lack of adequate recreational programs and facilities is a menace to the morals, happiness, and welfare of the people of this State. Making available recreational opportunities for citizens of all ages is a subject of general interest and concern, and a function requiring appropriate action by both State and local government. *The General Assembly therefore declares that the public good and the general welfare of the citizens of this State require adequate recreation programs, that the creation, establishment, and operation of parks and recreation programs is a proper governmental function, and that it is the policy of North Carolina to forever encourage, foster, and provide these facilities and programs for all its citizens.*

N.C.G.S. § 160A-351 (2011) (emphasis added). Here the Court of Appeals made a passing reference to section 160A-351, which is clearly *relevant* to the question of whether defendants' conduct—maintaining and operating the Swimming Hole at Fun Junktion—is a governmental or proprietary endeavor. While we reserve comment on whether N.C.G.S. § 160A-351 is *ultimately determinative in light of* the facts at hand, we remand to the Court of Appeals for further remand to the trial court for detailed consideration of the degree of effect, if any, of section 160A-351. Whether defendants are entitled to governmental immunity in this case turns on the facts alleged in the complaint. Thus, even if the operation of a parks and recreation program is a governmental function by statute, the question remains whether the specific operation of the Swimming Hole component of Fun Junktion, in this case and under these circumstances, is a governmental function. *See, e.g., Glenn v. City of Raleigh,* 246 N.C. 469, 477, 98 S.E.2d 913, 918-19 (1957) (concluding that a municipality was not entitled to governmental immunity despite existence of statute

declaring parks and recreational facilities to be a proper governmental function in light of other factors pleaded in the complaint).[1]

We recognize that not every nuanced action that could occur in a park or other recreational facility has been designated as governmental or proprietary in nature by the legislature. We therefore offer the following guiding principles going forward. When the legislature has not directly resolved whether a specific activity is governmental or proprietary in nature, other factors are relevant. We have repeatedly held that if the undertaking is one in which *only* a governmental agency could engage, it is perforce governmental in nature. *See Evans*, 359 N.C. at 54, 602 S.E.2d at 671; *see also Britt*, 236 N.C. at 451, 73 S.E.2d at 293 ("If the undertaking of the municipality is one in which only a governmental agency could engage, it is governmental in nature."). This principle remains true. So, when an activity has not been designated as governmental or proprietary by the legislature, that activity is necessarily governmental in nature when it can only be provided by a governmental agency or instrumentality.

We concede that this principle has limitations in our changing world. Since we first declared in *Britt*, over half a century ago, that an activity is governmental in nature if it can only be provided by a governmental agency, many services once thought to be the sole purview of the public sector have been privatized in full or in part. Consequently, it is increasingly difficult to identify services that can only be rendered by a governmental entity.

Given this reality, when the particular service can be performed both privately and publicly, the inquiry involves consideration of a number of additional factors, of which no single factor is dispositive. Relevant to this inquiry is whether the service is traditionally a service provided by a governmental entity,[2] whether a substantial fee is charged for the service provided,[3] and whether that fee does more

1. *Glenn* cited N.C.G.S. § 160-156 (1957), the predecessor statute to N.C.G.S. § 160A-351. *See* N.C.G.S. § 160-156 (1957) ("The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this State require an adequate recreation program and that the creation, establishment and operation of a recreation system is a governmental function . . . .").

2. *See, e.g., Sides v. Cabarrus Mem'l Hosp., Inc.*, 287 N.C. 14, 25-26, 213 S.E.2d 297, 304 (1975) ("[O]peration of a public hospital is not one of the 'traditional' services rendered by local governmental units. Accordingly, . . . we hold that the construction, maintenance and operation of a public hospital by either a city or a county is a proprietary function.").

3. *See, e.g., Koontz v. City of Winston-Salem*, 280 N.C. at 530, 186 S.E.2d at 908 (holding that City was engaged in a proprietary capacity in operation of a sanitary

than simply cover the operating costs of the service provider.[4] We conclude that consideration of these factors provides the guidance needed to identify the distinction between a governmental and proprietary activity. Nevertheless, we note that the distinctions between proprietary and governmental functions are fluid and courts must be advertent to changes in practice. We therefore caution against overreliance on these four factors.

Analysis of the factors listed above when considering whether the action of a county or municipality is governmental or proprietary in nature is particularly important in light of two points we have previously emphasized.

> First, although an activity may be classified in general as a governmental function, liability in tort may exist as to certain of its phases; and conversely, although classified in general as proprietary, certain phases may be considered exempt from liability. Second, it does not follow that a particular activity will be denoted a governmental function even though previous cases have held the identical activity to be of such a public necessity that the expenditure of funds in connection with it was for a public purpose.

*Sides v. Cabarrus Mem'l Hosp., Inc.*, 287 N.C. 14, 21-22, 213 S.E.2d 297, 302 (1975) (citations and emphases omitted). Consequently, the proper designation of a particular action of a county or municipality is a fact intensive inquiry, turning on the facts alleged in the complaint, and may differ from case to case.

Here, it appears that the decision of the Court of Appeals that defendants were not entitled to governmental immunity, turned solely or predominantly upon the fact that the services defendants provided could also be provided by nongovernmental entities. As

---

landfill, in part because City was receiving revenues "over and beyond incidental income"); *Hare v. Butler*, 99 N.C. App. 693, 699, 394 S.E.2d 231, 235 ("Charging a substantial fee to the extent that a profit is made is strong evidence that the activity is proprietary."), *disc. rev. denied*, 327 N.C. 634, 399 S.E.2d 121 (1990).

4. *See, e.g.*, *Rich v. City of Goldsboro*, 282. N.C. 383, 386, 192 S.E.2d 824, 826 (1972) ("[T]he City of Goldsboro received from the Kiwanis Club the sum of $1,200.00 which was less than one percent of the operating costs. The trial court properly concluded the Kiwanis Club's donation was incidental income, totally insufficient to support a conclusion the city was operating Herman Park as a proprietary or business venture."); *James v. Charlotte*, 183 N.C. 674, 677, 183 N.C. 630, 632-33, 112 S.E. 423, 424 (1922) (concluding that the city engaged in governmental function in removing garbage of inhabitants for a fee covering only actual collection and disposal expenses).

noted, this distinction lacks the utility it once had. Accordingly, we vacate and remand the decision of the Court of Appeals for further remand to the trial court for proceedings not inconsistent with this opinion. Again, in so doing, we express no position on whether defendants in this case are ultimately entitled to governmental immunity.

### III. Conclusion

This case is vacated and remanded to the Court of Appeals for further remand to the trial court for additional proceedings not inconsistent with this opinion.

VACATED AND REMANDED.