NO. COA13-597

NORTH CAROLINA COURT OF APPEALS

Filed: 4 March 2014

VIKING UTILITIES CORPORATION,
INC., GARLAND W. TUTON, AND SUE C.
TUTON,

    Plaintiffs,

    V.                    Onslow County
                               No. 12 CVS 3846

ONSLOW WATER AND SEWER AUTHORITY,

    Defendant.

Appeal by defendant from order filed 18 February 2013 by Judge W. Allen Cobb, Jr., in Onslow County Superior Court. Heard in the Court of Appeals 9 October 2013.

> *Ward and Smith, P.A., by Ryal W. Tayloe and Jeremy M. Wilson, for plaintiff-appellees.*
>
> *Turrentine Law Firm, PLLC, by S.C. Kitchen, for defendant-appellant.*

STEELMAN, Judge.

Where further development of the record is necessary for determination of whether the defendant is entitled to assert the defense of governmental immunity, the trial court did not err by denying defendant's motion to dismiss under N.C. Gen. Stat. § 1A-1, Rule 12(b)(1), (2), and (6).

I. Factual and Procedural Background

On 16 November 2007, Viking Utilities Corporation, Inc., Garland W. Tuton, and Sue C. Tuton (collectively plaintiffs), entered into an "Asset Purchase Agreement for the Acquisition of the Wastewater System Assets of Viking Utilities Corporation, Inc., by Onslow Water and Sewer Authority." The parties amended the agreement on 17 April 2008. The agreement provided that Onslow Water and Sewer Authority (defendant) would purchase Viking's wastewater system, including real property owned by plaintiffs, for $5,550,000. Defendant paid plaintiffs $500,000 at closing, and the parties agreed that most of the balance of the purchase price, $4,800,000, would be donated to defendant by plaintiffs. The agreement also contained a specific provision that defendant would receive a credit of $250,000 towards the purchase price in return for allowing plaintiffs to connect over the next five years to the wastewater system at any location served by defendant without payment of a "Tap Fee." The credit would be used at the rate of $2,500 per connection. The agreement also contained a specific representation by defendant that the transaction did not require "the approval or consent of any federal, state, local or other governmental body or agency that has not been obtained[.]"

On 27 September 2012, plaintiffs filed a complaint alleging that defendant had breached its agreement by refusing to allow plaintiffs to connect with defendant's sewer system without payment of a tap fee. The complaint sought specific performance of the agreement, a declaratory judgment that plaintiffs were entitled to 100 residential tap fees, and in the alternative asked for rescission or reformation of the agreement. On 18 October 2012, defendant filed a motion to dismiss pursuant to Rules 12(b)(1), (2), and (6) of the North Carolina Rules for Civil Procedure, for lack of jurisdiction and for failure to state a claim upon which relief may be granted. On 5 December 2012, plaintiffs filed their First Amended Complaint, which added three additional claims: (1) restitution, *quantum meruit*, and unjust enrichment; (2) estoppel; and (3) negligent misrepresentation. On 28 December 2012, defendant filed its second motion to dismiss for lack of jurisdiction and failure to state a claim upon which relief may be granted. On 18 February 2013, Judge Cobb denied defendant's motions to dismiss pursuant to Rules 12(b)(1), (2), and (6) of the North Carolina Rules for Civil Procedure

Defendant appeals.

## II. Interlocutory Appeal

Defendant's appeal of the denial of its motion to dismiss is interlocutory. However, "this Court has repeatedly held that appeals raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review." *Price v. Davis,* 132 N.C. App. 556, 558-59, 512 S.E.2d 783, 785 (1999) (citations omitted). To the extent defendant's appeal is based upon the affirmative defense of immunity, this appeal is properly before this Court. *See id.*

## III. Motion to Dismiss

In defendant's only argument on appeal, defendant contends that the trial court erred in denying its motion to dismiss. We disagree.

## A. Standard of Review

We review "a trial court's denial of a motion to dismiss that raises sovereign immunity as grounds for dismissal" *de novo. White v. Trew*, 366 N.C. 360, 362-63, 736 S.E.2d 166, 168 (2013).

## B. Governmental Immunity

"Under the doctrine of governmental immunity, a county or municipal corporation 'is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity.'" *Estate of Williams v. Pasquotank County*,

366 N.C. 195, 198, 732 S.E.2d 137, 140 (2012) (quoting *Evans ex rel. Horton v. Hous. Auth.*, 359 N.C. 50, 53, 602 S.E.2d 668, 670 (2004) (internal quotation omitted). "Nevertheless, governmental immunity is not without limit. '[G]overnmental immunity covers only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions.' Governmental immunity does not, however, apply when the municipality engages in a proprietary function." *Williams*, 366 N.C. at 199, 732 S.E.2d at 141 (quoting *Evans*, 359 N.C. at 53, 602 S.E.2d at 670 (citations omitted), and citing *Town of Grimesland v. City of Washington*, 234 N.C. 117, 123, 66 S.E.2d 794, 798 (1951).

In *Williams* the Court took the "opportunity to restate our jurisprudence of governmental immunity," *Williams* at 196, 732 S.E.2d at 139, and in so doing focused on the need for courts to engage in a fact-based analysis, considering various relevant factors, rather than applying bright-line rules:

> In determining whether an entity is entitled to governmental immunity, the result therefore turns on whether the alleged tortious conduct of the county or municipality arose from an activity that was governmental or proprietary in nature. . . . [T]he threshold inquiry in determining whether a function is proprietary or governmental is whether, and to what degree, the legislature has addressed the issue.

*Williams* at 199-200, 732 S.E.2d at 141-42. *Williams* arose from a drowning at a public park and, although noting the existence of

statutory provisions affirming the public benefit of parks and recreation, it declined to hold that these provisions were dispositive. Instead, the Court held that, even if the general operation of a parks program had been statutorily designated as a governmental function, "the question remains whether the specific operation of the [swimming area where the drowning occurred] in this case and under these circumstances, is a governmental function." *Williams* at 201, 732 S.E.2d at 142. The *Williams* Court also offered certain guiding principles for future courts to apply:

> [W]hen the particular service can be performed both privately and publicly, the inquiry involves consideration of a number of additional factors, of which no single factor is dispositive. Relevant to this inquiry is whether the service is traditionally a service provided by a governmental entity, whether a substantial fee is charged for the service provided, and whether that fee does more than simply cover the operating costs of the service provider. We conclude that consideration of these factors provides the guidance needed to identify the distinction between a governmental and proprietary activity. Nevertheless, we note that the distinctions between proprietary and governmental functions are fluid and courts must be advertent to changes in practice. We therefore caution against overreliance on these four factors.

*Williams* at 202-03, 732 at 143. Finally, *Williams* held:

> Analysis of the factors listed above when considering whether the action of a county

> or municipality is governmental or proprietary in nature is particularly important in light of two points we have previously emphasized. . . . "First, although an activity may be classified in general as a governmental function, liability in tort may exist as to certain of its phases; and conversely, although classified in general as proprietary, certain phases may be considered exempt from liability. Second, it does not follow that a particular activity will be denoted a governmental function even though previous cases have held the identical activity to be of such a public necessity that the expenditure of funds in connection with it was for a public purpose." Consequently, the proper designation of a particular action of a county or municipality is a fact intensive inquiry, turning on the facts alleged in the complaint, and may differ from case to case.

*Williams* at 203, 732 S.E.2d at 143 (quoting *Sides v. Cabarrus Mem'l Hosp., Inc.*, 287 N.C. 14, 21-22, 213 S.E.2d 297, 302 (1975) (internal citations and emphases omitted).

In *Town of Sandy Creek v. E. Coast Contr., Inc.*, __ N.C. App. __, 741 S.E.2d 673 (2013) this Court applied *Williams* to the plaintiff's allegations that the defendant, the City of Northwest, had failed to properly manage its contract with an engineering firm for construction of a sewer system. We held that, although the operation of a sewer system might be a governmental function, the specific allegations of the plaintiff's complaint did not assert acts undertaken in a governmental capacity:

> These allegations of breaches of the duty of reasonable care do not concern decisions of government discretion such as whether to construct a sewer system or where to locate the sewer system. Instead, the alleged breaches concern Northwest's handling of the contract and Northwest's business relationship with the contractor, acts that are not inherently governmental but are commonplace among private entities. . . . [W]we find that Northwest was involved in a proprietary function while handling its business relationship with ECC and the trial court did not err in denying Northwest's motion to dismiss based on governmental immunity.

*Sandy Creek*, __ N.C. App. at __, 741 S.E.2d at 676-77. In this case, as in *Sandy Creek*, the plaintiffs' allegations involve its "business relationship" with defendant.

Based on *Williams* and *Sandy Creek*, we hold that determination of whether defendant is entitled to assert the defense of governmental immunity will require the trial court to consider the pertinent statutory provisions as well as factual evidence regarding plaintiffs' allegations, fees charged by defendant, whether the fees cover more than the operating costs of the water authority, and any other evidence relevant to the issue of whether, in executing and interpreting its contract with plaintiffs, defendant was acting in a governmental or proprietary capacity. Because such evidence was not before the court in ruling on a motion to dismiss under N.C. Gen. Stat. § 1A-1, Rule 12(b)(1), (2), or (6), the trial court did not err by

denying defendant's motion to dismiss at this stage of the proceedings. Our decision to affirm the trial court does not prevent the parties from seeking summary judgment, at which time they may offer documentary or testimonial evidence in support of their positions. As we are holding that the trial court did not err by denying the motion to dismiss, we do not reach the parties' arguments concerning whether, in the event that the court determines that defendant is entitled to assert the defense of governmental immunity, the defense has been waived by execution of a valid contract with plaintiffs.

## Conclusion

We hold that the trial court did not err in its denial of defendant's motion to dismiss and that its order should be affirmed.

AFFIRMED.

Judges HUNTER, ROBERT C., and BRYANT concur.