**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 13-2097**

---

AGI ASSOCIATES, LLC,

>              Plaintiff - Appellee,

>      v.

CITY OF HICKORY, NORTH CAROLINA,

>              Defendant – Appellant,

>      and

PROFILE AVIATION CENTER, INCORPORATED,

>              Defendant.

---

Appeal from the United States District Court for the Western District of North Carolina, at Statesville.   Richard L. Voorhees, District Judge.  (5:13-cv-00061-RLV-DCK)

---

Argued:  October 28, 2014                Decided:  December 11, 2014

---

Before TRAXLER, Chief Judge, DIAZ, Circuit Judge, and DAVIS, Senior Circuit Judge.

---

Affirmed by published opinion. Senior Judge Davis wrote the opinion, in which Chief Judge Traxler and Judge Diaz joined.

---

**ARGUED**: J. Samuel Gorham, III, John William Crone, III, GORHAM & CRONE, LLP, Hickory, North Carolina, for Appellant.   Edward Bilbro Davis, BELL, DAVIS & PITT, P.A., Charlotte, North Carolina, for Appellee.   **ON BRIEF**: Frank C. Newton, Jr.,

Charlotte, North Carolina, for Appellant.  Adam T. Duke, BELL, DAVIS & PITT, P.A., Winston-Salem, North Carolina, for Appellee.

―――――――――――

DAVIS, Senior Circuit Judge:

This case concerns a question of North Carolina law: whether governmental immunity from equitable claims is waived when a county or municipality acts in a proprietary, rather than governmental, capacity. The district court answered that question in the affirmative and denied Appellant City of Hickory's motion to dismiss for lack of subject matter jurisdiction. For the reasons that follow, we affirm.[1]

I.

In January 2013, Appellee AGI Associates, LLC, commenced this action against City of Hickory and Profile Aviation Center, Inc. on claims arising out of an agreement between Hickory and Profile. Jurisdiction was based on diversity of citizenship. Hickory and Profile agreed that Hickory would pay Profile for aviation services that Profile provided at the Hickory Regional Airport. In addition, the agreement granted Profile a leasehold interest in certain parcels of land at the airport and allowed Profile to grant security interests in its leasehold interest to obtain financing. The parties agreed that in the event of Profile's default, Hickory had a first right to cure, which

_____

[1] We have jurisdiction over this interlocutory appeal. See Davis v. City of Greensboro, N.C., 770 F.3d 278, 281-82 (4th Cir. 2014).

3

would allow Hickory to reclaim the leasehold interest free of any security interests.

In June 2004, Profile executed and delivered a $2 million promissory note to RBC Centura Bank, which it secured by granting the bank an interest in the leased premises and assigning rents from tenants at the airport. In April 2010, RBC Centura Bank assigned its rights, title, and interest in the promissory note to AGI. Ultimately, Profile defaulted on the promissory note[2] and in May 2011, filed a petition for reorganization in the U.S. Bankruptcy Court for the Western District of North Carolina. In February 2012, the bankruptcy court placed Hickory in possession of the leased premises. AGI claims that pursuant to the agreement between Hickory and Profile, Hickory had to first cure Profile's financing obligations before taking possession of the leased premises. It also demands from Hickory the rental payments from tenants of the airport, which Hickory has refused.

AGI filed this action against Profile and Hickory. Against Profile, it asserted a breach of contract claim, which is not at issue in this appeal. Against Hickory, it asserted an action for judicial foreclosure, a demand for accounting,

---

[2] The district court noted that the "precise timing of Profile's default on its bank note is unknown," but that letters "demonstrate[d] Hickory's understanding of Profile as being in default" as of May 15, 2009 and April 21, 2011. J.A. 220-21.

4

disgorgement of rents, and unjust enrichment. Hickory promptly moved to dismiss the claims asserted against it for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Fed. R. Civ. P. 12(b)(6). The district court held that by acting in a proprietary, as opposed to governmental, capacity in operating the airport, Hickory waived its governmental immunity and therefore denied the motion to dismiss for lack of subject matter jurisdiction. Furthermore, it dismissed AGI's claims for judicial foreclosure and an accounting as moot, leaving only the disgorgement of rents and unjust enrichment claims intact. Hickory now appeals.

II.

Questions of subject matter jurisdiction are reviewed de novo. Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 815 (4th Cir. 2004) (en banc). When a defendant argues that the complaint fails to allege facts establishing subject matter jurisdiction, as Hickory does here, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). The burden of establishing subject matter jurisdiction rests with the plaintiff as "the party asserting jurisdiction." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

5

Under North Carolina law, counties and municipalities retain immunity from suit unless they consent to be sued or waive immunity. Whitfield v. Gilchrist, 497 S.E.2d 412, 414 (N.C. 1998). This immunity, often referred to as governmental immunity, can be waived by a municipality in three discrete ways: (1) by entering into a valid contract; (2) by acting in a proprietary capacity; and (3) by purchasing liability insurance.[3]

Under the contract theory of waiver, when a county or municipality enters into a valid contract, it has "implicitly consent[ed] to be sued for damages on the contract in the event it breaches the contract." Smith v. State, 222 S.E.2d 412, 423–24 (N.C. 1976)(addressing the State's immunity from suit); see also Data Gen. Corp. v. Cnty. of Durham, 545 S.E.2d 243, 247 (N.C. Ct. App. 2001)(citing to Smith v. State for the proposition that when a governmental entity such as a county "enters into a valid contract, the entity 'implicitly consents to be sued for damages'" if there is a breach). To successfully establish waiver under this theory, a plaintiff must show that N.C. Gen. Stat. § 159-28(a), which sets out the requirements for

---

[3] The State of North Carolina has further partially abrogated its sovereign immunity by passing the North Carolina Tort Claims Act, N.C. Gen. Stat. § 143-291 et seq., which permits suits against the State. The Act does not apply to local governments or their agents, and is not at issue here.

6

a county to enter into a valid contract, has been met.  Data Gen., 545 S.E.2d at 247.

Alternatively, under the proprietary function theory, a county or municipality waives its governmental immunity by acting in a proprietary, as opposed to governmental, capacity. Estate of Williams ex rel. Overton v. Pasquotank Cnty. Parks and Recreation Dep't., 732 S.E.2d 137, 141 (N.C. 2012).  The rationale for this exception is that when a municipality acts beyond the scope of its ordinary governmental functions and engages in services for a profit, it should be treated as a private corporation, including with respect to the liability to which private corporations are subject.  Id.  The final way that a municipality may waive immunity is by purchasing liability insurance, which is not at issue here.  Data Gen., 545 S.E.2d at 246.

## A.

The crux of the parties' disagreement is whether under the proprietary function theory, a municipality waives governmental immunity for equitable claims.  Hickory, which has conceded that it was acting in a proprietary capacity, claims that when a municipality acts pursuant to a proprietary function, it waives immunity only for tort and contract claims, not for equitable claims such as unjust enrichment and disgorgement of profits. AGI, by contrast, posits that governmental immunity is waived

7

for any suit, including equitable claims, in which the underlying cause of action arises from the county or municipality acting in a proprietary capacity.

To resolve this issue, we look to North Carolina state law on immunity to supply the rule of decision, as jurisdiction is based on diversity. Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co., 514 F.3d 327, 329 (4th Cir. 2008). With no controlling precedent from the Supreme Court of North Carolina on this issue, we are confronted with the task of predicting how that court would rule.[4] Salve Regina Coll. v. Russell, 499 U.S. 225, 241 (1991) (Rehnquist, C.J., dissenting); Ellis v. Grant Thornton LLP, 530 F.3d 280, 287 (4th Cir. 2008). "In such circumstances, the state's intermediate appellate court decisions 'constitute the next best indicia of what state law is,' although such decisions 'may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise.'" Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 957 F.2d 1153, 1156 (4th Cir.

---

[4] A lack of controlling precedent on the state rule of decision can merit certification of the issue to the state's highest court. The State of North Carolina, however, has no certification procedure in place for federal courts to certify questions to its courts. Fontenot v. Taser Int'l, Inc., 736 F.3d 318, 326 (4th Cir. 2013).

8

1992) (quoting 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4507 (2d ed. 1982)).

Because (1) North Carolina precedent suggests that the Supreme Court of North Carolina would rule that immunity from equitable claims may be waived pursuant to the proprietary function theory and (2) the rationale behind the theory, as articulated by both the United States Supreme Court and the Supreme Court of North Carolina, is consistent with the waiver of immunity for equitable claims, we hold that the district court did not err in its application of North Carolina state law.

B.

1.

Hickory contends that North Carolina law limits waiver of governmental immunity under the proprietary function theory to contract and tort cases only. In so arguing, it relies most heavily on Data General, and also Whitfield and M Series Rebuild, LLC v. Town of Mount Pleasant, 730 S.E.2d 254 (N.C. Ct. App. 2012).

We readily conclude that neither Whitfield nor M Series Rebuild is of assistance to Hickory. Reliance on these cases is misguided because in neither case did the courts analyze the government's claim of immunity under the proprietary function theory. Rather, the courts' finding of immunity hinged entirely

9

upon the contract theory of waiver.  See Whitfield, 497 S.E.2d at 414–15 (explaining that it was reversing the lower court on the basis that it "improperly expanded" Smith v. State, which addressed only the contract theory of waiver); M Series Rebuild, LLC, 730 S.E.2d at 258–60 (setting forth the requirements of N.C. Gen. Stat. § 159-28(a) and finding that plaintiff had not met those requirements).  Indeed, neither case even mentioned the parallel proprietary function theory of waiver, much less expressly addressed whether immunity from the equitable claims could be waived under that theory.  Neither case, therefore, imposes any limitations on whether governmental immunity from equitable claims may properly be waived under the proprietary function theory.

Hickory's reliance on Data General is stronger, but the case still falls short of holding that waiver of immunity pursuant to the proprietary function theory is limited to contract and tort actions.  In Data General, the plaintiff, a computer equipment lessor, asserted breach of contract, quantum meruit, estoppel, and negligent misrepresentation claims against the County of Durham, which moved to dismiss the claims on the basis of immunity.  Data Gen., 545 S.E.2d at 245.  With respect to the equitable claims of quantum meruit and estoppel, the court concluded that governmental immunity barred both claims because the county had not "expressly entered [into] a valid

contract" pursuant to the statutory requirements of N.C. Gen. Stat. § 159-28(a). Id. at 248. Then, the court concluded that the plaintiff's claim for negligent misrepresentation was not barred by immunity because Durham County had acted proprietarily by entering into a lease that was "'chiefly for the private advantage' of the county." Id. at 249 (quoting Britt v. City of Wilmington, 73 S.E.2d 289, 293 (N.C. 1952)). If immunity from equitable claims can properly be waived under the proprietary function theory, the court could have upheld the quantum meruit and estoppel claims on the same basis that it had upheld the negligent misrepresentation claim: that Durham County had acted in a proprietary capacity. The fact that it chose not to do so creates at least an inference that waiver under the proprietary function theory does not extend to equitable claims.

But we decline to give to Data General the controlling weight which Hickory urges for two independent reasons. First, we hesitate to apply Data General to the facts of this case. In Data General, the plaintiff negotiated directly with officials of Durham County to procure a final lease agreement between the parties. Id. at 245. In finding that the county retained its immunity from the plaintiff's claims, the Data General court relied in part on the maxim that parties contracting with the government are presumed to know the limitations of their dealings with the government. See id. at 248 ("Furthermore,

11

parties dealing with governmental organizations are charged with notice of all limitations upon the organizations' authority, as the scope of such authority is a matter of public record."). As such, Data General should have known that one of the requirements for suing a county for breach of contract is the inclusion of a pre-audit certificate under N.C. Gen. Stat. § 159-28(a), and the court rightly penalized it for failing to comply with the statutory requirements. But unlike Data General, AGI was a complete stranger to the negotiations between Profile and Hickory. In this light, the equities that propelled the Data General court to find that the county retained its immunity do not exist here. Indeed, applying Data General would engender inequity; it would penalize AGI for the shortcomings of Profile. We see no reason to impose this type of burden on a successor-in-interest with no control over the deficiencies of an original contracting party, and Hickory has not suggested any reasonable basis for us to do so.

And second, even if Data General were apposite, its persuasiveness is called into question by a recent North Carolina Court of Appeals case, which strongly implies, although it does not explicitly hold, that immunity from equitable claims may be waived pursuant to the proprietary function theory. In Viking Utilities Corp. v. Onslow Water and Sewer Authority, 755 S.E.2d 62, 63 (N.C. Ct. App. 2014), the court of appeals

12

affirmed the trial court's denial of defendant's motion to dismiss a host of equitable claims, including specific performance, a request for declaratory relief, rescission, reformation, unjust enrichment and quantum meruit, and estoppel based on governmental immunity.  The court found that where further development of the record could uncover that the defendant was acting in a proprietary capacity, the district court did not err in denying defendant's motion to dismiss.  Id. at 63, 66.  If the rule were clear that the proprietary function theory does not waive immunity for equitable claims, as Hickory contends, then the court should have reversed the trial court on the basis that regardless of whether further facts revealed that the municipal entity was acting in a proprietary function, immunity barred the claim.  By failing to do so, the court implicitly acknowledged the notion that proprietary function theory operates to waive immunity for equitable claims.

Considering the lack of precedent from the  Supreme Court of North Carolina, Viking Utilities, as the most recent opinion from the North Carolina Court of Appeals, provides the "best indicia of what constitutes state law" on this issue of immunity.  See Liberty Mut., 957 F.2d at 1156.  To be sure, this opinion from a state intermediate court does not, in our view, singularly control the outcome of this case.  But it is consistent with the view taken in Estate of Williams, the most

13

recent decision of the Supreme Court of North Carolina in which the court "restate[d] [its] jurisprudence of governmental immunity." Estate of Williams, 732 S.E.2d at 139. Although the precise issue presented here was not before the court, it stated: "Nevertheless, governmental immunity is not without limit. 'Governmental immunity covers only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions.'" Id. at 141 (quoting Evans v. Housing Auth. of Raleigh, 602 S.E.2d 668, 670 (N.C. 2004) (emphasis added by Estate of Williams court) (citations omitted)). The court's emphasis on the limitation of governmental immunity in Estate of Williams combined with the Viking Utilities decision lends substantial credence to our prediction that, when it is presented with the issue, the Supreme Court of North Carolina will hold that immunity from equitable claims may be waived pursuant to the proprietary function theory.

2.

We now turn to whether extending governmental immunity to Hickory is consistent with the public policy purposes underlying governmental immunity and its waiver in North Carolina. We are persuaded that given the rationale underlying the proprietary function theory, the Supreme Court of North Carolina would hold

14

that immunity from equitable claims may be waived pursuant to the proprietary function theory.

"The governmental-proprietary distinction owe[s] its existence to the dual nature of the municipal corporation." Owen v. City of Independence, 445 U.S. 622, 644 (1980). When a municipality acts in its governmental capacity, "it share[s] the immunity traditionally accorded the sovereign." Id. at 645. When it acts as a corporation, it is "held to the same standards of liability as any private corporation." Id. at 644; see also Bowling v. City of Oxford, 148 S.E.2d 624, 628 (N.C. 1966) ("When a city or town engages in an activity which is not an exercise of its governmental function but is proprietary in nature, the city, like an individual or a privately owned corporation engaged in the same activity, is liable in damages for injury to persons or property due to its negligence or other wrongful act in the conduct of such activity."). Thus, just as a private corporation would ordinarily be subject to liability for disgorgement of profits and unjust enrichment claims, so too should a municipality when it acts proprietarily.

This is especially so considering that Hickory has failed to articulate why it, or any municipality for that matter, needs protection from equitable claims such as unjust enrichment when it chooses deliberately to act beyond its governmental duties. The traditional problems associated with imposing liability on

15

governmental entities, such as disrupting essential public services and imposing monetary liability for nonprofit services, do not concern us here. See Smith, 222 S.E.2d at 419 (detailing literature which presents the arguments in favor of and against sovereign immunity). If Hickory is concerned about the exposure to litigation that its proprietary activities may entail, it has the same form of protection available to it as any other private corporation: it may refuse to engage in such proprietary activities. But once it chooses to do so, we have confidence that the mandate from the Supreme Court of North Carolina clearly controls: a municipality may not hide behind the veil of its governmental status and seek a special protection from liability not afforded to its peers engaging in similar proprietary activities. See City of Oxford, 148 S.E.2d at 628.

## III.

For the reasons set forth, the order of the district court is

AFFIRMED.

16