An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-513

Filed 20 May 2026

Wake County, No. 24CV021993-910

MICHAEL CREECH, Plaintiff,

v.

CITY OF RALEIGH, et al., Defendants.

Appeal by Plaintiff from orders entered 25 November 2024 and 7 January 2025 by Judges Matthew T. Houston and Clayton Somers, respectively, in Wake County Superior Court. Heard in the Court of Appeals 14 January 2026.

> *Burton Law Firm, PLLC, by Attorney Jason M. Burton, for plaintiff-appellant.*
>
> *Walter K. Burton, PLLC, by Walter K. Burton, for plaintiff-appellant.*
>
> *Senior Associate City Attorney, Andrew J. Seymour for defendant-appellee City of Raleigh, Zach Manor, and Anthony McLamb*
>
> *Pettey & Partrick, L.L.P., by Attorneys Alayna M. Poole and Rodney E. Pettey for defendant-appellee Oscar Carmona*

STADING, Judge.

This appeal arises from a personal injury claim asserted against the City of Raleigh (the "City") and others.[1] Discovery was stayed and the case was ultimately

---

[1] Plaintiff's Complaint also named the following City employees, in both their individual and official capacities, as Defendants: City Urban Forester, Zach Manor; City Arborist, Anthony McLamb; and

dismissed on governmental and public official immunity grounds. For the reasons below, we affirm in part and reverse in part.

## I. Background

On 17 June 2022, Michael Creech ("Plaintiff") visited Nash Square, a public park in Raleigh, North Carolina. While seated on a park bench, a large section of an oak tree fell and struck Plaintiff. As a result, Plaintiff sustained numerous injuries.

Thereafter, on 15 July 2024, Plaintiff initiated legal action asserting a negligence claim against the City and three of its employees (collectively, "Defendants"). Specifically, Plaintiff alleged the "Subject Tree displayed visible signs of disease, decay and other evidence of compromised structural integrity," and Defendants were negligent in inspecting, maintaining, pruning, and/or removing this tree. Plaintiff also alleged the City waived governmental immunity by: adopting "the Waiver of Immunity Guidelines" on 19 January 1999; purchasing liability insurance pursuant to N.C. Gen. Stat. § 160A-485; and operating Nash Square as a "public enterprise" and "proprietary function" whereby the City generates revenue by charging fees. Plaintiff further alleged the City's employees were not entitled to public official immunity because they were "public employees whose negligent acts

Former City Parks Department Director, Oscar Carmona. Additionally, Plaintiff's Complaint included "Doe Defendants #1-5," subject to amendment upon discovery, as "private individuals or entities hired and/or authorized by the [City] to inspect, assess, maintain, and/or mitigate or eliminate risks posed by trees and other vegetation in Nash Square Park[.] . . ." Since there has not been any developments with respect to "Doe Defendants #1-5," any reference to Defendants in this opinion does include "Doe Defendants #1-5."

and/or omissions occurred in the ordinary course of their employment."

In response, Defendants moved to dismiss Plaintiff's claims on governmental and public official immunity grounds. On 16 September 2024, the City and its employees, Defendants Oscar Carmona, Zach Manor, and Anthony McLamb, in their official capacities, moved for dismissal under N.C. Gen. Stat. § 1A-1, Rule 12(b)(2), asserting governmental immunity. That same day, Defendants Manor and McLamb, in their individual capacities, moved for dismissal under N.C. Gen. Stat. § 1A-1, Rule 12(b)(1), (2), and (6), asserting public official immunity. Likewise, on 19 September 2024, Defendant Carmona, in his individual capacity, moved for dismissal under N.C. Gen. Stat. § 1A-1, Rule 12(b)(1), (2), and (6), asserting public official immunity.

In support of its motion to dismiss, the City filed sworn affidavits from: City Attorney, Karen McDonald; City Risk and Insurance Manager, Ryan Wilson; City Special Events Planner, Sarah Heinsohn; City Parks Department Technology Analyst, Michael Gutekunst; and City Real Estate Manager, Ralph Recchie. Along with these affidavits, the City included certified copies of the City's excess insurance policies and immunity waiver resolution, copies of special event fee schedules for Nash Square, records of special events held at Nash Square between 1 July 2019, and 30 June 2024, total cost of upkeep records, and publicly-available Nash Square real estate records.

On 25 September 2024, shortly after Defendants moved for dismissal of Plaintiff's claims, Plaintiff served discovery requests on the City. Plaintiff's discovery

requests to the City consisted of 30 interrogatories, 21 requests for production, and 33 requests for admissions. On 4 October 2024, Plaintiff also served Defendants McLamb and Manor with independent discovery requests. Plaintiff's discovery requests to Defendant McLamb consisted of 25 interrogatories, 18 requests for production, and 25 requests for admissions. Plaintiff's discovery requests to Defendant Manor consisted of 26 interrogatories, 18 requests for production, and 29 requests for admissions.

On 18 October 2024, in response to Plaintiff's discovery requests, Defendants moved to stay discovery pending the resolution of Defendants' motions to dismiss. The stay was granted by Judge Matthew T. Houston in an order entered on 25 November 2024. On 6 December 2024, Plaintiff filed an affidavit verifying his complaint. Plaintiff's affidavit also addressed his injuries, the condition of the tree, and who he believed were responsible. Further, Plaintiff's affidavit acknowledged he neither refused nor been presented with a release agreement. During the 9 December 2024 Civil Session of Wake County Superior Court, Judge Clayton Somers granted Defendants' motions to dismiss in an order entered on 7 January 2025. Specifically, the trial court granted the City's Motion to Dismiss, which included Defendants Carmona, Manor, and McLamb, in their official capacities, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(2) on governmental immunity grounds. Likewise, the trial court granted the motions to dismiss filed by Defendants Carmona, Manor, and McLamb, in their individual capacities, pursuant to N.C. Gen. Stat. § 1A-1, Rule

12(b)(1), (2), and (6) on public official immunity grounds. Plaintiff timely appealed both the 25 November 2024 order staying discovery and the 7 January 2025 order granting Defendants' motions to dismiss.

## II. Jurisdiction

### A. The 7 January 2025 Dismissal Order

This Court has jurisdiction to consider the 7 January 2025 order granting Defendants' motions to dismiss. *See* N.C. Gen. Stat. § 7A-27(b)(1) (2025) ("[A]ppeal lies of right directly to the Court of Appeals ... [f]rom any final judgment of a superior court[.]").

### B. The 25 November 2024 Discovery Order

With respect to the 25 November 2024 order staying discovery, however, Plaintiff concedes this appeal is interlocutory. *See Veazey*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) (citation omitted) ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.").

"Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Sharpe v. Worland*, 351 N.C. 159, 161, 522 S.E.2d 577, 578 (1999) (citation omitted). Despite this general rule, Plaintiff relies on N.C. Gen. Stat. § 1-278 (2025), which provides: "[u]pon an appeal from a judgment, the court may review any intermediate order involving the merits and necessarily affecting the judgment." *See Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252,

253 (1994) ("[I]t is the appellant's burden to present appropriate grounds for this Court's acceptance of an interlocutory appeal . . ."). N.C. Gen. Stat. § 1-278 permits, but does not require, this Court to exercise jurisdiction.

Under N.C. Gen. Stat. § 1-278, review is proper under the following conditions: (1) the appellant must have timely objected to the order; (2) the order must be interlocutory and not immediately appealable; and (3) the order must have involved the merits and necessarily affected the judgment. *See Brooks v. Wal-Mart Stores, Inc.*, 139 N.C. App. 637, 641, 535 S.E.2d 55, 59 (2000) (citation omitted). In this case, the 25 November 2024 order staying discovery was interlocutory and not immediately appealable. *See Veazey*, 231 N.C. at 362, 57 S.E.2d at 381 (citation omitted); *see also Yorke v. Novant Health, Inc.*, 192 N.C. App. 340, 349, 666 S.E.2d 127, 134 (2008).

As to the next statutory requirement, Plaintiff contends "the 25 November 2024 order directly affected the merits . . . and necessarily impacted the trial court's final judgment." Plaintiff argues the 25 November 2024 order "foreclosed the ability to develop or elicit any substantive evidence from Defendants to rebut their immunity defenses[,]" and ultimately denied access "to the discovery tools necessary to meet his burden, resulting in dismissal of his claims." We disagree.

Plaintiff's contention that the 25 November 2024 order directly *affected* the merits, does not comport with the statutory language that such order *involve the merits*. *See* N.C. Gen. Stat § 1-278 (emphasis added) ("[T]he court may review any intermediate order *involving the merits*[.]"). Here, the 25 November 2024 order did

not involve the merits—it merely stayed discovery until the merits of governmental and public official immunity were resolved. *See Tinajero v. Balfour Beatty Infrastructure, Inc.*, 233 N.C. App. 748, 758, 758 S.E.2d 169, 176 (2014) (noting a decision involves the merits when it substantially decides the primary issues in contention). Likewise, the 25 November 2024 order did not involve any substantive legal issues related to Plaintiff's negligence claim, nor did it deny the right to pursue or to prove the claim through introduction of other evidence and examination of witnesses. *See Yorke*, 192 N.C. App. at 350, 666 S.E.2d at 134. Consequently, N.C. Gen. Stat. § 1-278 does not confer jurisdiction.

## III. Analysis

The remaining question is whether the trial court properly granted Defendants' motions to dismiss on governmental and public official immunity grounds. Plaintiff contends the trial court erred in granting the City's motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(2) and the motions to dismiss filed by Defendants Carmona, Manor, and McLamb, in their individual capacities,[2] pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1), (2), and (6).[3] After a meticulous

---

[2] Although Plaintiff also challenges the trial court's dismissal of the official capacity claims against Defendants Carmona, Manor, and McLamb, no argument was presented on this issue; it is therefore treated as abandoned by virtue of N.C. R. App. P. 28(b)(6) ("[i]ssues . . . in support of which no reason or argument is stated, will be taken as abandoned."). In any event, "when a plaintiff sues a government employee in his official capacity, the 'real party in interest' is 'the governmental entity, not the named official.' " *Est. of Graham v. Lambert*, 385 N.C. 644, 653, 898 S.E.2d 888, 897 (2024).

[3] While Defendants' motions to dismiss alleged several procedural mechanisms to dispose of the action, the ultimate issue concerns the doctrines of governmental and public official immunity. In fact, at the hearing in trial court, all arguments addressed governmental and public official immunity.

review of the record, we affirm in part and reverse in part.

## A. Standard of Review

This Court "appl[ies] a *de novo* standard when reviewing either a Rule 12(b)(1) or 12(b)(6) dismissal . . . ." *Holton v. Holton*, 258 N.C. App. 408, 414, 813 S.E.2d 649, 654 (2018). Likewise, Rule 12(b)(2) dismissals on immunity grounds are reviewed de novo. *See Providence Volunteer Fire Dep't, Inc. v. Town of Weddington*, 382 N.C. 199, 209, 876 S.E.2d 453, 460 (2022) (citing *White v. Trew*, 366 N.C. 360, 362–63, 736 S.E.2d 166 (2013)). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Bartley v. City of High Point*, 381 N.C. 287, 293, 873 S.E.2d 525, 532 (2022) (quoting *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009)).

Although our review is de novo, "[t]he standard of review to be applied by a trial court in deciding a motion under Rule 12(b)(2) depends upon the procedural context confronting the court." *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005).

> Three procedural postures are typical: (1) the defendant makes a motion to dismiss without submitting any opposing evidence; (2) the defendant supports its motion to dismiss with affidavits, but the plaintiff does not file any opposing evidence; or (3) both the defendant and the plaintiff submit affidavits addressing the personal jurisdiction issues.

*Torres v. City of Raleigh*, 288 N.C. App. 617, 620–21, 887 S.E.2d 429, 433 (2023). As in this case, where the parties submit dueling affidavits, "the court may hear the

matter on affidavits presented by the respective parties, . . . [or] the court may direct that the matter be heard wholly or partly on oral testimony or depositions." *Banc of Am. Sec. LLC*, 169 N.C. App. at 694, 611 S.E.2d at 183 (citations omitted). "If the trial court chooses to decide the motion based on affidavits, '[t]he trial judge must determine the weight and sufficiency of the evidence [presented in the affidavits] much as a juror.'" *Id.* (alteration in original) (quoting *Fungaroli v. Fungaroli*, 51 N.C. App. 363, 367, 276 S.E.2d 521, 524 (1981)); *see also Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615–16, 532 S.E.2d 215, 218 (2000) ("[W]here, as in this case, defendants submit some form of evidence to counter plaintiffs' allegations, those allegations can no longer be taken as true or controlling and plaintiffs cannot rest on the allegations of the complaint.").

"When this Court reviews a decision as to personal jurisdiction, it considers only 'whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court.'" *Id.* (citation omitted). Under N.C. Gen. Stat. § 1A-1, Rule 52(a)(2), the trial court need not make findings of fact unless requested. *See Fungaroli*, 51 N.C. App. at 367, 276 S.E.2d at 524. Additionally, "when the record contains no findings of fact, it is presumed . . . that the court on proper evidence found facts to support its judgment." *Banc of Am. Sec. LLC*, 169 N.C. App. at 694, 611 S.E.2d at 183 (citation modified). And, "[i]t is this Court's task to review the record to determine whether it contains any evidence that would support the trial judge's conclusion . . ." *Id.* at 695, 611

S.E.2d at 183. In doing so, "[w]e are not free to revisit questions of credibility or weight that have already been decided by the trial court." *Id.*

As our Court has summarily stated:

> Where, as here, the record contains no indication that the parties requested that the trial court make specific findings of fact, and the order appealed from contains no findings, we presume that the trial court made factual findings sufficient to support its ruling, and it is this Court's task to review the record to determine whether it contains evidence that would support the trial court's legal conclusions, . . . and to review the trial court's legal conclusions *de novo*[.]

*McCullers*, 265 N.C. App. at 220–21, 828 S.E.2d at 531 (internal citations omitted).

## B. Governmental Immunity

Plaintiff contends the trial court erred in dismissing his complaint on grounds of governmental immunity. We disagree.

"Governmental immunity covers only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions." *Providence*, 382 N.C. at 212, 876 S.E.2d at 462 (cleaned up) (quoting *Estate of Williams ex rel. Overton v. Pasquotank Cnty Parks & Rec. Dept.,* 366 N.C. 195, 199, 732 S.E.2d 137, 141 (2012)). But governmental immunity does not apply when the municipality engages in a proprietary function. *See Bynum v. Wilson Cnty.*, 367 N.C. 355, 358, 758 S.E.2d 643, 646 (2014). Resolving the present inquiry "turns on whether the alleged tortious conduct of the . . . municipality arose from an activity that was governmental or proprietary in nature." *Williams*, 366 N.C. at 199, 732 S.E.2d at 141.

A governmental function is "[a]ny activity of the municipality which is discretionary, political, legislative, or public in nature and performed for the public good in behalf of the State rather than for itself[.] . . ." *Britt v. City of Wilmington*, 236 N.C. 446, 450, 73 S.E.2d 289, 293 (1952). "When, however, the activity is commercial or chiefly for the private advantage of the compact community, it is private or proprietary." *Id.* (citation omitted); *see also Evans v. Hous. Auth. of City of Raleigh*, 359 N.C. 50, 54, 602 S.E.2d 668, 671 (2004) (describing the test set forth in *Britt* as our "one guiding principle."). Put differently,

> when a municipality is acting in behalf of the State in promoting or protecting the health, safety, security or general welfare of its citizens, it is an agency of the sovereign. When it engages in a public enterprise essentially for the benefit of the compact community, it is acting within its proprietary powers.

*Britt*, 236 N.C. at 450–51, 73 S.E.2d at 293 (citation modified).

"[T]he threshold inquiry in determining whether a function is proprietary or governmental is whether, and to what degree, the legislature has addressed the issue." *Williams*, 366 N.C. at 200, 732 S.E.2d at 141–42. "If an action has been designated as governmental or proprietary in nature by the legislature, that is the end of the inquiry." *Providence*, 382 N.C. at 213, 876 S.E.2d at 462 (citations and internal quotations omitted). However, "when an activity has not been designated as governmental or proprietary by the legislature, that activity is necessarily governmental in nature when it can only be provided by a governmental agency or

instrumentality." *Williams*, 366 N.C. at 202, 732 S.E.2d at 142. With respect to this

principle, the North Carolina Supreme Court noted:

> [it] has limitations in our changing world. Since we first declared in *Britt*, over half a century ago, that an activity is governmental in nature if it can only be provided by a governmental agency, many services once thought to be the sole purview of the public sector have been privatized in full or in part. Consequently, it is increasingly difficult to identify services that can only be rendered by a governmental entity. Given this reality, when the particular service can be performed both privately and publicly, the inquiry involves consideration of a number of additional factors, of which no single factor is dispositive. Relevant to this inquiry is whether the service is traditionally a service provided by a governmental entity, whether a substantial fee is charged for the service provided, and whether that fee does more than simply cover the operating costs of the service provider. We conclude that consideration of these factors provides the guidance needed to identify the distinction between a governmental and proprietary activity. Nevertheless, we note that the distinctions between proprietary and governmental functions are fluid and courts must be advertent to changes in practice. We therefore caution against overreliance on these four factors.

*Id.* at 202–03, 732 S.E.2d at 143 (footnotes omitted). Additionally, while an activity

may be classified in general as a governmental function, certain phases may be

proprietary. *Id.* at 203, 732 S.E.2d at 143 (quoting *Sides v. Cabarrus Mem'l Hosp.,

Inc.*, 287 N.C. 14, 21–22, 213 S.E.2d 297, 302 (1975)). This determination is a "fact

intensive inquiry, turning on the facts alleged in the complaint, and may differ from

case to case." *See id.*

To begin, our Courts have not held N.C. Gen. Stat. § 160A-351 (2025), which

enables municipalities to create, fund, and maintain recreation facilities, dispositive on whether the legislature has designated a function propriety or governmental. *See Williams*, 366 N.C. at 201, 732 S.E.2d at 142. Likewise, N.C. Gen. Stat. § 143-345.4 (2025), which delegates tree maintenance responsibilities of Nash Square, does not "directly resolve" the issue. *See Meinck v. City of Gastonia*, 371 N.C. 497, 504, 819 S.E.2d 353, 358 (2018). We therefore turn to the second inquiry under *Williams*: whether the activity "can only be provided by a governmental agency or instrumentality." *Williams*, 366 N.C. at 202–03, 732 S.E.2d at 142–43.

Here, the City provided an affidavit from the Senior Technology Analyst of its Parks, Recreation and Cultural Resources Department, Michael Gutekunst. This affidavit provided that "[t]he Parks Department is responsible for handling the maintenance and upkeep of City-owned and controlled public parks and squares within the City of Raleigh." Yet, the inquiry is whether the activity "*can only be provided* by a governmental agency or instrumentality." *Williams*, 366 N.C. at 202–03, 732 S.E.2d at 142–43 (emphasis added). Although a private entity could conceivably engage in tree maintenance activities, any private entity engaging in the maintenance of Nash Square would be acting on behalf of the City. *See Providence*, 382 N.C. at 217, 876 S.E.2d at 465; *see also Meinck*, 371 N.C. at 514, 819 S.E.2d at 364. "Because the particular activity here can be performed both publicly and privately, we consider 'a number of additional factors,' including 'whether the service is traditionally a service provided by a governmental entity, whether a substantial

fee is charged for the service provided, and whether that fee does more than simply cover the operating costs of the service provider.'" *Meinck*, 371 N.C. at 514, 819 S.E.2d at 364 (quoting *Williams*, 366 N.C. at 202–03, 732 S.E.2d at 143).

As to "whether the service is traditionally a service provided by a governmental entity," we conclude that maintenance of government-owned property is a service traditionally provided by a governmental entity. *Meinck*, 371 N.C. at 514, 819 S.E.2d at 364; *see also* N.C. Gen. Stat. § 143-345.4. For the next factor, Plaintiff maintains Nash Square is a revenue-generating enterprise. Specifically, Plaintiff contends "[t]he City hosts public and private events in exchange for application, reservation, rental, and admission fees—activities commonly conducted by private businesses." Here, the City provided an affidavit from its Special Events Planner, Sarah Heinsohn. Along with this affidavit, the City included: copies of special event fee schedules for Nash Square; records of special events held at Nash Square between 1 July 2019, and 30 June 2024; and total cost of upkeep records. These materials tended to show Nash Square is a free public space where the only revenue generated is from permit-related fees to help offset administrative costs associated with processing and overseeing private events. *See Williams*, 366 N.C. at 202–03, 732 S.E.2d at 143; s*ee also, e.g.*, *Rich v. City of Goldsboro*, 282 N.C. 383, 386, 192 S.E.2d 824, 826 (1972). In fact, the City's affidavits show the City has not generated any revenue from Nash Square over the last five years. *See Williams*, 366 N.C. at 202–03, 732 S.E.2d at 143.

Given that the City maintains Nash Square and since the City has provided evidence showing the lack of revenue, any of which would cover operating costs, we conclude the activity is governmental. *See Williams*, 366 N.C. at 202–03, 732 S.E.2d at 143; *see also Providence*, 382 N.C. at 217–18, 876 S.E.2d at 465. Indeed, the record contains evidence supporting the existence of governmental immunity. *See Banc of Am. Sec. LLC*, 169 N.C. App. at 695, 611 S.E.2d at 183.

## C. Waiver of Governmental Immunity

We next consider whether Defendants waived their governmental immunity. Pursuant to N.C. Gen. Stat. § 160A-485(a) (2025), governmental immunity may be waived: (1) by purchasing insurance that actually indemnifies the city from tort liability; (2) by participating in a local government risk pool that actually indemnifies the city; or (3) by adopting a resolution that deems the creation of a funded reserve to be the same as a purchase of insurance.

### 1. *Waiver By Purchase of Insurance*

Plaintiff contends that Defendants waived immunity by purchasing two insurance plans with exclusionary clauses that do not address governmental immunity. The purchase of excess insurance does not waive a governmental entity's immunity when the insurance policy contains language that preserves the entity's immunity and excludes coverage for claims to which immunity applies. *Smith v. Lane*, 298 N.C. App. 560, 563–64, 915 S.E.2d 465, 469 (2025) (citations omitted).

In *Smith v. Lane,* this Court considered whether the City's insurance policies

waived governmental immunity. 298 N.C. App. at 563–64, 915 S.E.2d at 469. After reviewing the language of the policies along with the City's affidavits, a Court of Appeals panel concluded:

> The plain language of the endorsement for "Governmental Tort Liability" in the City of Raleigh's insurance policies . . . excludes coverage for claims to which governmental immunity applies. As governmental immunity applies to each of Plaintiff's claims, the excess insurance policies provide no coverage and therefore, no waiver of immunity has occurred.

*Id.*

As in *Smith*, it is uncontested that the City has two excess insurance policies that provide a combined total of $10,000,000.00 in insurance coverage for certain claims subject to certain limitations and endorsements. Notably, the insurance policies in *Smith* are nearly identical to the insurance policies in this case. Also similar to *Smith*, the City provided affidavits from City Attorney, Karen McDonald; City Risk and Insurance Manager, Ryan Wilson; and included certified copies of the City's excess insurance policies. These materials tended to show the endorsements preserved their immunity and excluded coverage to claims in which immunity applied. *See id.* For example, the policy stated "the insured does not waive any of its statutory immunities for monetary limits of liability . . . ."

Although Plaintiff attempts to distinguish *Smith* by asserting Defendant's activity in this case is proprietary, our preceding analysis has determined it is governmental. Moreover, while Plaintiff also takes issue with needing to "allege and

prove" waiver of immunity under *Smith*, we have already noted the different procedural context before us. *See Banc of Am. Sec. LLC*, 169 N.C. App. at 694, 611 S.E.2d at 183; *see also Bruggeman*, 138 N.C. App. at 615–16, 532 S.E.2d at 218 ("[W]here, as in this case, defendants submit some form of evidence to counter plaintiffs' allegations, those allegations can no longer be taken as true or controlling and plaintiffs cannot rest on the allegations of the complaint."). Thus, despite Plaintiff's urging, we conclude that the record contains evidence that Defendants did not waive governmental immunity by purchasing insurance. *See Smith*, 298 N.C. App. at 564, 915 S.E.2d at 469; *see also Banc of Am. Sec. LLC*, 169 N.C. App. at 695, 611 S.E.2d at 183.

### 2. *Waiver By Participation in a Local Government Risk Pool*

Based on the City's affidavit from its Risk and Insurance Manager, Ryan Wilson, the City does not participate in a local government risk pool. Rather, the City manages its liability through a $1,000,000.00 self-insured retention ("SIR"). Further, Plaintiff has not argued that the City waived governmental immunity by participating in a risk pool. *See Smith*, 298 N.C. App. at 565, 915 S.E.2d at 469. We therefore do not address this issue. *See* N.C. R. App. 28(b)(6).

### 3. *Waiver By Resolution*

Next, Plaintiff contends that Defendants waived immunity by adopting "Waiver of Immunity Interim Guidelines." In 1999, under N.C. Gen. Stat. § 160A-485, the City adopted a resolution setting forth guidelines for waiver of its immunity

and the immunity of its officers for claims within its $1,000,000.00 SIR. This resolution established mandatory requirements that must be met before the City would agree to a limited waiver. These requirements include that a party must accept the limited damages in the resolution and execute a release of all claims against all persons, firms, and corporations on account of the incident giving rise to the claim. *See Smith*, 298 N.C. App. at 565, 915 S.E.2d at 469–70 (citing *Arrington v. Martinez*, 215 N.C. App. 252, 259–60, 716 S.E.2d 410, 414–15 (2011)).

Here, Plaintiff has not met the waiver requirements of the City's Resolution. It is uncontested that Plaintiff had not agreed to execute a release in favor of the City, which is a condition precedent to the waiver. We therefore discern no error in the trial court's conclusion with respect to this issue. *See id*; *see also Banc of Am. Sec. LLC*, 169 N.C. App. at 695, 611 S.E.2d at 183.

### D.   Public Official Immunity

Lastly, Plaintiff contends the trial court erred in dismissing Plaintiff's complaint against Defendants Carmona, Manor, and McLamb, in their individual capacities, because they are not entitled to public official immunity. Specifically, Plaintiff argues Defendants Carmona, Manor, and McLamb are public employees— not public officials.

"Public official immunity is a derivative form of governmental immunity, which precludes suits against public officials in their individual capacities." *Wilcox v. City of Asheville*, 222 N.C. App. 285, 288, 730 S.E.2d 226, 230 (2012) (citation and

internal quotation marks omitted). This form of immunity "insulates a public official from personal liability for mere negligence in the performance of his duties unless his alleged actions were malicious or corrupt or fell outside and beyond the scope of his duties." *McCullers*, 265 N.C. App. at 221, 828 S.E.2d at 531.

Plaintiff has neither alleged nor argued the actions of Defendants Carmona, Manor, and McLamb were malicious, corrupt, or fell outside and beyond the scope of their duties; instead, Plaintiff's complaint alleges "negligent acts and/or omissions [attributable to the individual Defendants] occurred in the ordinary course of their employment." *See* N.C. R. App. 28(b)(6). Accordingly, we only address whether Defendants Carmona, Manor, and McLamb were public officials capable of asserting immunity. *See Petrillo v. Barnes-Jones*, 291 N.C. App. 62, 67, 894 S.E.2d 772, 777 (2023) (citations and internal quotations omitted) ("Public official immunity may be asserted by public officials, but not by public employees.").

In determining whether an individual is a public official or public employee, our courts have noted distinctions between a public official and a public employee: "(1) a public office is a position created by the constitution or statutes; (2) a public official exercises a portion of the sovereign power; and (3) a public official exercises discretion, while public employees perform ministerial duties." *Isenhour v. Hutto*, 350 N.C. 601, 610, 517 S.E.2d 121, 127 (1999). We consider each in turn.

### 1. *The Nature of the Position*

"A position is considered created by statute when the officer's position has a

clear statutory basis *or* the officer has been delegated a statutory duty by a person or organization created by statute or the Constitution." *McCullers*, 265 N.C. App. at 223, 828 S.E.2d at 532 (citation modified). When "a statute expressly creates the authority to delegate a duty, a person or organization who is delegated and performs the duty on behalf of the person or organization in whom the statute vests the authority to delegate passes the first the *Isenhour* factor." *Id.* (citation omitted).

The North Carolina General Assembly enacted the City's charter, which has been amended over time. *See* 1949 N.C. Sess. Laws 1442; 1971 N.C. Sess. Laws 1777 (hereinafter, "Raleigh, N.C., City Charter"). Pursuant to this Charter, the General Assembly provided: "[t]here shall be and there are hereby created the following departments of the City of Raleigh: . . . (6) Department of Parks and Recreation, which shall be headed by the Director of Parks and Recreation." Raleigh, N.C., City Charter, Art. VI, § 6.1(6). To this end, the General Assembly also provided within the City's charter:

> There is hereby created a Department of Parks and Recreation of the City of Raleigh which shall consist of a Director of Parks and Recreation and other such officers and employees and divisions as may be deemed necessary by the City Council, and whose salaries shall be fixed by the City Council, such officers and employees may include persons appointed to enforce ordinances of the City of Raleigh and Statutes of the State of North Carolina on those properties under control of the Department of Parks and Recreation; and on said property said employees when duly appointed and sworn shall have the same power and duty as would any peace officer. There may be such divisions as established from time to time by the City

Council in its discretion.

Raleigh, N.C., City Charter, Art. VI, § 6.34(a). Since Defendants have differing roles, we analyze each in turn.

First, Plaintiff's complaint alleged Defendant Carmona: "was employed by the City of Raleigh and served as the Director of the Department of Parks, Recreation and Cultural Resources." The City's charter goes beyond a mere general authority establishing a "Department of Parks and Recreation of the City of Raleigh," and establishes the position of "Director of Parks and Recreation."[4] *See* Raleigh, N.C., City Charter, Art. VI, § 6.34(a); *cf. Isenhour*, 350 N.C. at 611, 517 S.E.2d at 128 ("Unlike the specific grant of statutory authority given municipalities to employ police officers, [the] defendants have not directed our attention to, and our research has not disclosed, any statute specifically authorizing municipalities to employ school crossing guards per se."). Since the General Assembly specifically created the position, there is a "clear statutory basis" for the City's employment of Defendant Carmona as Director of Parks and Recreation of the City. *See McCullers*, 265 N.C. App. at 223, 828 S.E.2d at 532. Accordingly, the first *Isenhour* factor is satisfied with respect to Defendant Carmona.

As to Defendant Manor, Plaintiff's complaint alleged that "[a]t all times

---

[4] While the City's Charter establishes the position of "Director of Parks and Recreation," the City refers to this position as the "Director of Parks, Recreation, and Cultural Resources." *See* Raleigh, N.C., Code of Ordinances § 9-1001 (2025).

relevant . . . Defendant Manor was employed by the City of Raleigh as the Urban Forester." With respect to Defendant McLamb, Plaintiff's complaint alleged he "was employed by the City of Raleigh as the City Arborist."

In addition to establishing the Director of Parks and Recreation, the General Assembly provided the "Department of Parks and Recreation . . . shall consist of a Director of Parks and Recreation *and other such officers and employees* and divisions as may be deemed necessary by the City Council[.]" Raleigh, N.C., City Charter, Art. VI, § 6.34(a). As the General Assembly has not *specifically* authorized employment of an Urban Forester or Arborist, we consider whether the City delegated a statutory duty to Defendants Manor and McLamb. *See Isenhour*, 350 N.C. at 611, 517 S.E.2d at 128; *see also McCullers*, 265 N.C. App. at 223, 828 S.E.2d at 532.

Here, N.C. Gen. Stat. § 143-345.4 provides that "[t]he governing body of the City . . . is *authorized*, at its own expense, to grade, to lay out in walks, to plant with trees, shrubbery, and flowers and otherwise to adorn Moore and Nash squares *and to that end has the general charge and management of these squares*." N.C. Gen. Stat. § 143-345.4 (emphasis added). Yet, "[t]he fact that a city has the authority to make certain decisions, however, does not mean that the city is under an obligation to do so. The words 'authority' and 'power' are not synonymous with the word 'duty.' " *Cooper v. Town of S. Pines*, 58 N.C. App. 170, 173, 293 S.E.2d 235, 236 (1982). From the statutory language of N.C. Gen. Stat. § 143-345.4, we conclude the City has the authorization—not the duty—to manage Nash Square. Since Defendants Manor and

McLamb neither have a "clear statutory basis" nor evidence of being delegated "a statutory duty," Defendants Manor and McLamb fail the first factor under *Isenhour* and thus may not rest on the protections of public official immunity. *McCullers*, 265 N.C. App. at 223, 828 S.E.2d at 532; *see also Cline v. James Bane Home Bldg., LLC*, 278 N.C. App. 12, 26, 862 S.E.2d 54, 65 (2021) (citation omitted) ("As the first factor is not met, we need not reach the other two *Isenhour* factors."). Accordingly, we reverse the trial court's dismissal as to Defendants Manor and McLamb. Our analysis now turns to whether Defendant Carmona satisfies the remaining *Isenhour* factors.

### 2. *Exercise of Sovereign Power*

"[T]he mere statutory creation of a position does not confer public official status. Rather, the statute must also delegate some portion of the sovereign power to the position holder." *Id.* at 455, 915 S.E.2d at 430. "Cities, counties, and other localities are recognizable units that collectively make up the State and enjoy a slice of its sovereign power." *Est. of Graham v. Lambert*, 385 N.C. 644, 651, 898 S.E.2d 888, 895 (2024) (citations and internal quotations omitted). An individual exercises sovereign power when they "exercise[ ] a portion of some power that only the sovereign may exercise, as granted to the sovereign by either the Constitution or a statute." *McCullers*, 265 N.C. App. at 224–25, 828 S.E.2d at 533.

Here, the City provided affidavits and other evidence showing the State of North Carolina, which owns Nash Square, authorized the City to use and manage it.

Indeed, as State property, only the State or its instrumentalities can legally maintain it. Accordingly, with respect to the maintenance of Nash Square, the record supports that Defendant Carmona exercised a portion of the sovereign power. *See McCullers*, 265 N.C. App. at 224–25, 828 S.E.2d at 533; *see also Banc of Am. Sec. LLC*, 169 N.C. App. at 695, 611 S.E.2d at 183.

### 3.    *Discretionary Duties*

Next, "[d]iscretionary acts are those requiring personal deliberation, decision and judgment; duties are ministerial when they are absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Meyer v. Walls*, 347 N.C. 97, 113, 489 S.E.2d 880, 889 (1997) (citations and internal quotations omitted).

According to Plaintiff's complaint, Defendant Carmona was responsible for "the development, establishment, and enforcement of policies." Based on these allegations, the record supports that such activities involve some level of discretion. *See Banc of Am. Sec. LLC*, 169 N.C. App. at 695, 611 S.E.2d at 183. Thus, Defendant Carmona satisfies the third *Isenhour* factor. Accordingly, we hold the trial court did not err with respect to Defendant Carmona.

## IV.  Conclusion

We are without jurisdiction to consider whether the trial court abused its discretion in granting Defendants' motion to stay discovery. *See* N.C. Gen. Stat. § 1-278; *see also Jeffreys*, 115 N.C. App. at 379, 444 S.E.2d at 253. As for the trial court's

dismissal of Plaintiff's complaint on governmental and public official immunity grounds, we affirm in part and reverse in part. Specifically, we hold the trial court did not err in granting the City's motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(2) on governmental immunity grounds and the motion to dismiss filed by Defendant Carmona, in his individual capacity. However, we hold the trial court erred in granting Defendants' motions to dismiss with respect to Defendants Manor and McLamb, in their individual capacities, on public official immunity grounds.

AFFIRMED IN PART AND REVERSED IN PART.

Judge GRIFFIN concurs.

Judge ARROWOOD concurs in result.

Report per Rule 30(e).